VINCENT J. BOLGER *et al.*, d/b/a Gladstone Realtors, Plaintiffs-Appellants, *v.* DANLEY LUMBER CO., INC., Defendants-Appellees.—(ALLSTATE MOTORS, INC., *et al.*, Defendants.)

First District (4th Division)   No. 78-1466

Opinion filed September 27, 1979.

Errett O. Graham and Edward T. Graham, both of Chicago, for appellants.

Donald E. Egan and Floyd A. Mandell, both of Katten, Muchin, Gitles, Zavis, Pearl & Galler, of Chicago, for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:
Plaintiffs, Vincent J. Bolger and John L. Markay, d/b/a Gladstone

Realtors (Gladstone), filed a multicount complaint in the circuit court of Cook County against the various defendants based on an alleged breach of an exclusive real estate listing agreement. Count II of that complaint alleged that the defendant-vendee, Danley Lumber Co. (Danley), intentionally induced the defendant-vendor, Allstate Motors, Inc. (Allstate), to breach its exclusive listing agreement with Gladstone and, thereby, wrongfully deprived Gladstone of its real estate sale's commission.

The trial court entered an order granting summary judgment in favor of Danley and the court found that there was no just reason to delay enforcement or appeal of the order. (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a).) Gladstone appeals contending material questions of fact exist which preclude the entry of summary judgment.

We agree and we reverse and remand for further proceedings.

On August 1, 1973, James Gaudio, president of Allstate, executed an exclusive real estate listing contract with Gladstone. This agreement gave Gladstone, *inter alia*, the exclusive right to sell certain real estate—(owned by Allstate, as beneficiary of a land trust)—within 180 days at a price of $325,000 "or [at] any lesser price which Allstate agreed to accept." If the real estate was sold during this 180-day period, whether by Gladstone, Allstate or "by or through any other person," Gladstone would be entitled to a commission of "7% of the first $50,000 and 6% of the balance." The exclusive listing period expired on January 28, 1974.

Allstate sold the property to Danley for $300,000. The real estate sales contract is dated January 31, 1974. Gladstone filed suit against, among others, Danley, alleging that Danley had intentionally induced Allstate to breach the exclusive listing agreement. Danley's motion for summary judgment was granted. Gladstone appeals.

OPINION

■■ ■ Summary judgment may be granted when "the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to * * * judgment as a matter of law." (Ill. Rev. Stat. 1977, ch. 110, par. 57; *Chiero v. Chicago Osteopathic Hospital* (1979), 74 Ill. App. 3d 166, 392 N.E.2d 203.) The right to summary judgment must be clear and free from doubt. *Donart v. Board of Governors* (1976), 39 Ill. App. 3d 484, 349 N.E.2d 486; *Wegener v. Anna* (1973), 11 Ill. App. 3d 316, 296 N.E.2d 589.

■■ The recognition that economic relationships are entitled to protection against unreasonable interference is of comparatively recent vintage. (Prosser, Torts §129, at 927 (4th ed. 1971).) One type of interference

which has been designated by the courts as a separate tort is intentional interference with contractual relations. (*Graff v. Whitehouse* (1966), 71 Ill. App. 2d 412, 219 N.E.2d 128; Restatement (Second) of Torts §766 (1977); Annot., 26 A.L.R.2d 1227 (1952); Prosser, Torts §129, at 929 (4th ed. 1971).) This tort is comprised of three primary elements:

(1) the existence of a valid contract;

(2) defendant (a) intentionally and (b) without justification induces one party to breach his contractual obligations; and

(3) as a proximate result of this breach plaintiff, the other party to the contract, incurs damage.

*Farley v. Kissell Co.* (1974), 18 Ill. App. 3d 139, 310 N.E.2d 385; 45 Am. Jur. 2d *Interference* §39, at 314 (1969); see generally Annot., *Liability of Purchaser of Real Estate for Interference With Contract Between Vendor and Real-Estate Broker*, 29 A.L.R.3d 1229 (1970).

Danley contends summary judgment was appropriately granted in this case because the facts, developed through discovery, established as a matter of law: (1) that the exclusive listing agreement between Allstate and Gladstone had expired when Danley purchased the property in question; and (2) that even if the contract was still viable: (a) it did not entitle Gladstone to a commission; and (b) Danley had no knowledge of it and, therefore, could not have acted intentionally to induce its breach. We find that material issues of fact do exist which preclude the entry of summary judgment.

As to the first point, our concern is not when, in point of time, the property was actually purchased by Danley, but rather, when, in point of time, Danley *agreed to purchase* the property in question. The deposition testimony of four Danley officers discloses the following sequence of events. Sometime in late January or early February 1974, two Danley officers were driving along Mannheim Road when they saw a "For Sale" sign on the Allstate property. The two officers stopped, inspected the property and thereafter talked to James Gaudio, the president of Allstate. Later that same day, four Danley officers returned to the site, negotiated with Gaudio and agreed to purchase the property for $300,000. The four Danley officers "shook hands" with Gaudio on the deal. Bentley Weitzman, the president of Danley, was questioned about this agreement:

"Q. * * *[Y]ou agreed to the contract on the spot?

A. Yes.

Q. Essentially, it was an agreement between Danley Lumber Company and Allstate Motors and Mr. Gaudio, right at that time? Is that correct?

A. That's correct."

Marshall Fisher, the secretary-treasurer of Danley, stated in his deposition

that this agreement was based on the understanding that a mortgage could be obtained.[1]

It appears that there is a serious question of fact as to when this oral agreement was reached. While the deposition testimony of Thomas Eboli, a sales representative of Gladstone, is not entirely clear, it does indicate that this oral agreement between Danley and Allstate could have been reached as early as January 23, 1974—well before Gladstone's exclusive listing contract expired.

Eboli stated that on January 22, 1974, an agent from Carpenter Real Estate showed the Allstate property to a "very interested prospect." The agent called Eboli on January 23 and said he was returning to the property with that same prospect. Eboli did not have occasion to talk with this agent again until sometime in March. At that time, the agent informed Eboli that when he had returned to the property on January 23, Gaudio told him, "[D]on't bring anybody else around, the place is sold." Eboli's testimony raises the plausible inference that Gaudio may have agreed to sell the property to Danley on January 23, 1974. As we noted previously, this would be well within the time period requirement set forth in Allstate's exclusive listing contract with Gladstone.

Danley also contends that summary judgment was appropriate because Gladstone was not the procuring cause of the sale and, therefore, was not entitled to a commission under the exclusive listing agreement. We disagree.

■ The agreement specifically provided that if the property in question was sold by Gladstone, *by Allstate* or "by or through any other person," during the exclusive listing period, Gladstone would be entitled to a commission. Consequently, if Allstate did agree to sell the property to Danley during this period, Gladstone would have a right to the commission: (1) even though it was not the procuring cause of the sale (*Brown v. Miller* (1977), 45 Ill. App. 3d 970, 360 N.E.2d 585; *Hanlon v. Dunne* (1914), 189 Ill. App. 123); and (2) even though Allstate and Danley did not transform their agreement into writing until after the exclusive listing period expired (see *Garrett v. Babb* (1975), 24 Ill. App. 3d 941, 322 N.E.2d 217; *Wolfenberger v. Madison* (1976), 43 Ill. App. 3d 813, 357 N.E.2d 656).

Finally, Danley contends the facts establish as a matter of law that it had no knowledge of Gladstone's exclusive listing agreement with Allstate and, therefore, could not have acted intentionally to induce Allstate's alleged breach of that agreement.

"Since the test of inducing breach of contract requires an

---

[1] This mortgage contingency provision was consistent with the terms of the exclusive listing agreement. *Kenilworth Realty Co. v. Sanquist* (1977), 56 Ill. App. 3d 78, 371 N.E.2d 936.

intention on the part of the actor to interfere with another's contractual relations, it is clear that he must know of the existence of the contract with which he interferes *or * * * of facts from which such contract is reasonably to be inferred.* A person cannot be held liable for inducing a breach of contract which he neither knew or had reason to know existed." (Harper, *Interference with Contractual Relations*, 47 Nw. U.L. Rev. 873, 880-81 (1953); *Farley v. Kissel Co.* (1974), 18 Ill. App. 3d 139, 310 N.E.2d 385.)

In other words, intentional interference "presupposes knowledge of the plaintiff's interests, or at least of facts which would lead a reasonable man to believe in their existence." Prosser, Torts §129, at 941 (4th ed. 1971); Restatement (Second) of Torts §766, comment *i*, at 11 (1977).

The facts developed through discovery thus far indicate that Gladstone placed at least two "For Sale" signs on the Allstate property. One sign, approximately 5 feet by 10 feet, was placed on Allstate's front door. A wooden sign, approximately 4 feet by 16 feet, was secured to a post in Allstate's parking lot and faced Mannheim Road. According to the deposition testimony of Thomas Eboli, each of these "For Sale" signs contained the name "Gladstone Realtors" and its phone number.

Leroy Weitzman, the vice-president in charge of sales at Danley, stated that when he visited the Allstate property with the other Danley officers he saw both of these "For Sale" signs. However, he could not recall what the sign located in the parking lot said, and he claimed the sign on the front door only said "For Sale" with a telephone number located at the bottom. Marshall Fisher, Danley's secretary-treasurer, admitted that he saw the "For Sale" sign in the parking lot. However, he could not remember if it had printed on it "Gladstone Realty or anything like that." Bentley Weitzman and Erwin Lazarus, the other two Danley officers, stated that they did not see any "For Sale" signs on the property.

The above evidentiary material, standing alone, raises two material issues of fact: (1) whether Danley knew the property was listed with Gladstone Realtors; and (2) whether Danley knew or "should have known" of the exclusive listing agreement. These questions of fact cannot be resolved on a motion for summary judgment (*Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293), particularly since they raise an issue of credibility (see *State Farm Mutual Automobile Insurance Co. v. Short* (1970), 125 Ill. App. 2d 97, 260 N.E.2d 415).

Accordingly, for the reasons stated, we reverse the order granting Danley summary judgment and we remand the case for further proceedings consistent with this opinion.

Reversed and remanded.

JOHNSON and ROMITI, JJ., concur.