HODGMAN, INC., Plaintiff-Appellee, *v.* MARSHALL FELD, Indiv. and d/b/a Marshall Feld, Inc., Defendant-Appellant.

Second District No. 82—519

Opinion filed March 15, 1983.

424

Donald C. Hudson and Marc E. Webbles, both of Geneva, for appellant.

Ronald A. Gullstrand, of Aurora, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Marshall Feld (Feld), appeals from a judgment of the circuit court of Kane County requiring him to pay $2,258, plus costs, to plaintiff, Hodgman, Inc. (Hodgman), for breach of an oral contract to purchase goods. Defendant raises three issues on appeal: (1) whether the agreement between the parties constituted a contract to purchase or a brokerage agreement; (2) whether the contract is unenforceable under the statute of frauds (Ill. Rev. Stat. 1981, ch. 26, par. 2—201(1)), and; (3) whether plaintiff has established a *prima facie* case of breach of contract.

Pursuant to Supreme Court Rule 323(d) (87 Ill. 2d R. 323(d)), the parties submitted an agreed statement of facts in which the following facts were established. Testifying as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 60, now codified at Ill. Rev. Stat. 1981, ch. 110, par. 2—1102), defendant stated that in early 1981 he visited plaintiff's warehouse in Aurora and examined 2,258 pairs of rubber cut-off boots which he planned to sell to a third person, Raymond Buckner. Prior to that date, defendant had visited the warehouse on several occasions and had taken samples of the boots, apparently to show his intended buyer. Defendant negotiated with plaintiff for the purchase of said boots at $1 per pair. The boots were to be sold to Mr. Buckner for $1.50 per pair. In June 1981 an employee of Mr. Buckner picked up the boots from plaintiff's warehouse, and paid plaintiff by a check issued by Mr. Buckner in the sum of $3,388. At no time did defendant complain to any officer or agent of plaintiff about the quality of the merchandise.

Defendant also testified that he had conducted business with the plaintiff several times in the past. On some of these occasions, he directed the ultimate buyer of the goods to pick up the goods and pay

Hodgman directly. On other occasions, Feld arranged to pick up the goods and himself pay Hodgman. In the price quoted to his ultimate customer, Feld usually figured in the fees or profit to be realized by him on the transaction. On one particular occasion, Feld purchased 3,058 pairs of boots from plaintiff for Ventures Four, a corporation owned by defendant. Said corporation paid plaintiff directly for the goods. On another occasion, goods were purchased by Feld's company for a sum certain and then resold to a third person, who in turn paid plaintiff for the goods. In that instance, Feld received his profit directly from Hodgman.

Ronald Foster, president of Hodgman, testified he was contacted in 1981 by defendant who agreed to purchase 2,258 pairs of rubber cut-off boots. Mr. Foster stated it subsequently developed that Feld had resold the boots to Mr. Buckner with the understanding that Feld would receive the overage above the $1 per pair price quoted and accepted by Feld. Mr. Foster testified that Feld verbally agreed to guarantee the check of Mr. Buckner and that despite numerous requests by Mr. Foster, said check was not honored by Mr. Buckner, nor was it guaranteed by defendant. Mr. Foster stated he at no time agreed to pay commission to Feld, but he did agree that if Feld had resold the goods, any sum realized over and above plaintiff's asking price would be paid to Feld directly by plaintiff. The check from Mr. Buckner represented plaintiff's asking price of $1 per pair plus Feld's profit of $0.50 per pair.

Mr. Foster also testified to a course of dealing whereby Feld either purchased the goods or agreed to have them purchased by a third party, and received the difference between plaintiff's asking price and the price for which the goods were resold. Foster testified Feld originally agreed to purchase all distressed merchandise that plaintiff had, if a price could be agreed upon between plaintiff and Feld. A letter from defendant's attorney, dated September 4, 1981, was admitted into evidence as plaintiff's exhibit No. 1. The letter stated that defendant had tried to return the goods to Hodgman because they were defective, that Hodgman would not accept their return, and that the goods would therefore be sold to compensate defendant for storage charges which had accumulated in the amount of $3,000.

Foster admitted on cross-examination that no written contract was ever executed by the parties for the purchase of the goods in question. No purchase order was ever received from defendant, and all agreements between the parties were oral. Foster could not recall ever billing Feld's company for the goods in question.

At the close of plaintiff's case, defendant moved for a directed judgment on the ground that plaintiff failed to prove the existence of a contractual obligation to pay for the goods and because any contract which may have existed violated the Statute of Frauds. (Ill. Rev. Stat. 1981, ch. 26, par. 2—201(1).) The motion was denied.

Defendant was called as a defense witness. He testified neither he nor his company ever agreed to purchase the goods in question from plaintiff. He testified he never signed any agreement to purchase the goods, never offered to pay for any of the goods or guarantee Buckner's check, and that he never received nor took possession of the goods. Feld stated he was never billed, and neither he nor his company ever exercised any dominion or control over the goods. He first learned of a problem with the transaction when he was contacted over the phone by Foster. It was Feld's understanding that he was acting as a broker or a middleman for Hodgman, and that plaintiff had in fact agreed to pay him a commission for the goods purchased by Mr. Buckner.

The court entered judgment for the plaintiff for the purchase price of the goods ($1 per pair), plus costs.

The parties do not dispute the fact that a contract was formed between them. Rather, they dispute the nature of the contract and its terms. Defendant contends the evidence established a brokerage agreement under which he agreed only to sell the goods in question for at least $1 per pair, with any amount over $1 to be paid to him as commission. He maintains he was therefore not liable for payment of the purchase price of the goods. Plaintiff, on the other hand, argues that defendant verbally agreed to purchase the cut-off boots regardless of whether the boots were resold by defendant. Thus, he contends, and the circuit court held, defendant was liable for this amount when the sale to Mr. Buckner fell through.

■■■ Whether an oral contract exists, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier of fact. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 431 N.E.2d 738; *Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 371 N.E.2d 3.) Under general principles of contract law, where an agreement is indefinite, the courts will look to and adopt an interpretation which the parties themselves have placed on it. (*Board of Trade v. Dow Jones & Co.* (1982), 108 Ill. App. 3d 681, 439 N.E.2d 526; *Burgener v. Gain* (1981), 101 Ill. App. 3d 699, 428 N.E.2d 722.) Evidence of such an interpretation may be seen in the parties' contemporaneous or subsequent acts or conduct. (*In re Marriage of Whetstone* (1980), 87 Ill. App. 3d 164, 409 N.E.2d 41.) In

determining whether a certain relationship exists between the parties, the court must look to the substance rather than the form of the transaction, and the categorization given to a relationship by the interested parties is not conclusive of the nature of the relationship. *Abt v. Department of Revenue* (1966), 34 Ill. 2d 324, 215 N.E.2d 243.

A broker's contract is governed by the law applicable to ordinary contracts, in that the parties' minds must meet through offer and acceptance and the contract must be definite in its terms. (*Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 400 N.E.2d 614; *Bau v. Sobut* (1977), 50 Ill. App. 3d 732, 365 N.E.2d 724.) Under a brokerage agreement, the parties agree that one party shall be employed as an agent to make bargains and contracts between other persons in matters of trade, for compensation. (*Sunderland v. Day* (1957), 12 Ill. 2d 50, 145 N.E.2d 39.) A broker "bargains or carries on negotiations in behalf of his principal as an intermediary between the latter and third persons in transacting business relative to the acquisition of contractual rights, or to the sale or purchase of any form of property, real or personal, the custody of which is not entrusted to him for the purpose of discharging his agency." (*Village of Itasca v. Luehring* (1954), 4 Ill. 2d 426, 431, 123 N.E.2d 312; *City of Chicago v. Barnett* (1949), 404 Ill. 136, 88 N.E.2d 477.) No particular words are necessary to engage the services of a broker; rather, the essential requirement is that a broker act in that capacity with the consent of the principal. (*Plastics & Equipment Sales Co. v. DeSoto, Inc.* (1980), 91 Ill. App. 3d 1011, 415 N.E.2d 492.) The principal's consent to an individual acting as its broker can be manifested either expressly or by implication from the parties. (*Plastics & Equipment Sales Co. v. DeSoto, Inc.*) An implied contract exists in the situation where a property owner knows that the broker is endeavoring to effect a sale and expects to receive compensation for his services, and where the owner encourages the broker to aid in the sale and leads the broker to believe he will receive compensation. *Arthur Rubloff & Co. v. Drovers National Bank.*

In this case the parties both rely upon evidence of their prior dealings as support of their respective positions. However, it is clear from the evidence that the course of dealing between the parties included both an agency-type relationship and, under certain circumstances, a buyer-seller relationship.

The particular transaction in question here involved the sale of goods to a third party, who was to pay plaintiff directly and was to receive the goods directly from plaintiff. It is clear that the third party, Mr. Buckner, was the buyer and plaintiff was the seller.

Defendant, on the other hand, acted only as a middleman, and was to be paid by plaintiff only after the sale was consummated. Defendant never had custody of the goods in question prior to the sale to Mr. Buckner, except for a few samples, nor did he ever receive a bill for the goods. In addition, defendant never sent a purchase order to plaintiff for the goods, and all agreements between the parties were oral. Although the record does not indicate that plaintiff expressly consented to defendant's acting as an agent on plaintiff's behalf, plaintiff's conduct implied such consent. Plaintiff knew that defendant was attempting to effect a sale to a third party and retained custody of the goods until such sale was consummated. Plaintiff also knew that defendant expected to be paid compensation for any amount over plaintiff's asking price, and plaintiff agreed with this arrangement. From this evidence, it seems clear that defendant was acting as a broker for plaintiff, and that this was the interpretation placed upon the agreement by the parties themselves. See *Village of Itasca v. Luehring* (1954), 4 Ill. 2d 426, 123 N.E.2d 312; *Burgener v. Gain* (1981), 101 Ill. App. 3d 699, 428 N.E.2d 722.

However, Mr. Foster also testified to an additional promise made by defendant "to purchase all distressed merchandise that the plaintiff had, if a price could be agreed upon." He also testified that defendant orally promised to guarantee the check of Mr. Buckner if it did not clear. Although we agree with the defendant that his primary role in this particular transaction was that of broker, the evidence above also indicates that an additional promise may have been made which provided for the guarantee by defendant of payment for the goods in question. Whether an oral contract exists, its terms and conditions, and the intent of the parties are questions of fact to be determined by the trier of fact. (*Emmenegger Construction Co. v. King* (1982), 103 Ill. App. 3d 423, 431 N.E.2d 738; *Panko v. Advanced Appliance Service* (1977), 55 Ill. App. 3d 301, 371 N.E.2d 3.) The trial court's determination of defendant's obligation to pay the purchase price was supported by evidence in the record and therefore will not be reversed. *Dutton v. Roo-Mac, Inc.* (1981), 100 Ill. App. 3d 116, 426 N.E.2d 604.

Defendant's second contention is that any alleged contract for the sale of goods by plaintiff to defendant is void under the Statute of Frauds because the goods were valued in excess of $500. (Ill. Rev. Stat. 1981, ch. 26, par. 2—201.) He further maintains that the parties' subsequent performance is not consistent with the terms of any alleged oral agreement to purchase. Plaintiff contends that the oral contract to purchase falls within one of the exceptions to the

Statute of Frauds and, therefore, is not void for lack of a writing memorializing it. See Ill. Rev. Stat. 1981, ch. 26, pars. 2—201(1), (2), (3)(b), (3)(c).

■■ Section 2—201(1) of the Code requires all contracts for the sale of goods for the price of $500 or more to be in writing. (Ill. Rev. Stat. 1981, ch. 26, par. 2—201(1).) Section 2—201(2) provides for an exception in transactions "[b]etween merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents ***." (Ill. Rev. Stat. 1981, ch. 26, par. 2—201(2).) Plaintiff claims the contract to purchase falls within this exception because both parties were "merchants" within the meaning of section 2—201(2). Although defendant does appear to be a "merchant" as that term is defined in the Code (see Ill. Rev. Stat. 1981, ch. 26, par. 2—104(1)), section 2—201(2) was not intended to apply to the present situation. This section's only intended effect is "to take away *from the party who fails to answer [a written confirmation]* the defense of the Statute of Frauds; ***." (Emphasis added.) (Ill. Ann. Stat., ch. 26, par. 2—201, Uniform Commercial Code Comment, at 114 (Smith-Hurd 1963).) Even assuming the letter was a "written confirmation," which we do not believe it was, the defense here is being asserted by the sender of the letter rather than the receiver of it. Therefore, this section is inapplicable to the case at bar. *Cf. Campbell v. Yokel* (1974), 20 Ill. App. 3d 702, 313 N.E.2d 628.

Sections 2—201(3)(b) and (3)(c) provide for exceptions to the Statute of Frauds where the party asserting the defense admits in court that a contract for sale was made, or where the goods have been received and accepted. (Ill. Rev. Stat. 1981, ch. 26, pars. 2—201(3)(b), (3)(c).) Plaintiff relies upon its exhibit No. 1 as support for its position that defendant admitted in court that he accepted and received the goods in question in May 1981 and then attempted to return the goods four months later. However, while the letter might indicate an agreement to receive goods on a contingency basis from an intended buyer, it does not indicate that defendant agreed to purchase those goods. Thus, the letter is not an admission of a contract to purchase within the meaning of section 2—201(3)(b).

■■ Under section 2—201(3)(c) of the Code, partial performance of a contract will substitute for a writing if the goods have actually been received (see section 2—103(1)(c)), and accepted (section 2—606). (Ill. Ann. Stat., ch. 26, par. 2—201(3)(c), Illinois Code Comment, at 113 (Smith-Hurd 1963).) Section 2—103(1)(c) states that one "receives" goods when he takes physical possession of them. (Ill. Rev.

Stat. 1981, ch. 26, par. 2—103(1)(c).) The letter in the instant case supports plaintiff's position that defendant actually had possession of the goods. It can also be assumed, in the absence of specific findings of fact, that the trial court found defendant accepted the goods in question, possibly by failing to make an effective rejection of the goods within a reasonable period of time. (Ill. Rev. Stat. 1981, ch. 26, par. 2—606(b); *National Acceptance Co. of America v. Pintura Corp.* (1981), 94 Ill. App. 3d 703, 418 N.E.2d 1114.) Such a finding is supported by the record. Defendant had samples of the goods in question from the beginning of 1981 and therefore had ample opportunity to inspect and reject them at an earlier time. Having actually received and accepted the goods in question the contract to purchase was partially performed under section 2—201(3)(c), so that it was effectively removed from the Statute of Frauds. Ill. Ann. Stat., ch. 26, par. 2—201(3)(c), Illinois Code Comment, par. (c), at 113 (Smith-Hurd 1963).

 We also believe the contract to purchase distressed goods and guarantee the check of Mr. Buckner may be viewed as a promise to answer for the debt or default of another. A promise to pay the debt of another, after the debt is incurred, is void under the Statute of Frauds, unless it is made upon a consideration and reduced to writing. (*Raveret-Weber Printing Co. v. Wright* (1939), 301 Ill. App. 421, 23 N.E.2d 203.) Where, however, goods, money or services are furnished to a third person at the request and upon the credit of the promissor, the undertaking is original, and the statute is inapplicable. (*Raveret-Weber Printing Co.*) In the present case, Mr. Foster testified that defendant originally promised to pay for all distressed goods and that defendant guaranteed Mr. Buckner's check prior to its acceptance by plaintiff corporation. Therefore, it is clear that the goods in question were sold to Mr. Buckner upon the credit of the defendant, and the Statute of Frauds is inapplicable in this type of situation. *Raveret-Weber Printing Co.*

 Defendant's final contention is that the trial court erred in denying his motion for a directed verdict because the plaintiff failed to establish in his case-in-chief a *prima facie* case of breach of contract. Section 64(3) of the Civil Practice Act provides:

"(3) In all cases tried without a jury, defendant may, at the close of plaintiff's case, move for a finding or judgment in his favor. In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence. If the ruling on the motion is favorable to the defendant, a judgment dismissing the action shall be entered. *If the ruling on the motion is adverse to the*

*defendant he may proceed to adduce evidence in support of his defense, in which event the motion is waived."* (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, par. 64(3), now codified at Ill. Rev. Stat. 1981, ch. 110, par. 2—1110.)

In the instant case defendant proceeded to introduce evidence in support of his defense, following the denial of his motion. In so doing, defendant waived this issue on appeal. Even if this issue were not waived, we believe there was sufficient evidence to establish a *prima facie* case of breach of contract. Mr. Foster testified that defendant orally agreed to purchase all distressed goods and guarantee the check of Mr. Buckner. In addition, Mr. Foster stated defendant agreed to purchase the specific goods in question here for $1 per pair. The letter sent to plaintiff by defendant's attorney indicated defendant had possession of the goods in question which were alleged to be defective. This supports plaintiff's position that defendant agreed to assume responsibility for distressed goods. On the basis of this record there is sufficient evidence to prove the existence of an oral contract to purchase distressed goods. The breach of that contract was established through sufficient evidence that defendant had accepted the goods and had physical possession of them, yet never paid plaintiff.

Although the evidence indicated that the parties' relationship in the subject transaction was more like that of agent-principal rather than buyer-seller, nothing in plaintiff's case-in-chief negated or disproved the allegation that defendant orally agreed to purchase distressed goods and guarantee the check of Mr. Buckner. Thus, in our opinion a *prima facie* case of breach of contract was established by plaintiff and the motion for a directed verdict was properly denied. *Happel v. Mecklenburger* (1981), 101 Ill. App. 3d 107, 427 N.E.2d 974.

Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.