PHYLLIS HAMMEL, d/b/a Century 21-Hammel, Plaintiff-Appellee, v. JAMES A. RUBY *et al.*, Defendants-Appellants.

Fifth District   No. 5—84—0466

Opinion filed December 20, 1985.

Don P. Koeneman and D. Paul Koeneman, both of Chester, for appellants.

Rayburn A. Fricke, of Chester, for appellee.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Phyllis Hammel, d/b/a Century 21-Hammel, filed a complaint in the circuit court of Randolph County against defendants, James A. Ruby and Ann Degenhardt, for payment of a brokerage commission allegedly due to plaintiff as a result of the sale of certain real estate owned by defendants, which was located in Steeleville. Following a bench trial, the court found in favor of plaintiff and ordered defendants to pay plaintiff the sum of $3,720 plus prejudgment interest.

On appeal, defendants maintain that the trial court erred in (1) determining that the transfer of the real estate in question entitled plaintiff to a brokerage commission, and (2) awarding statutory prejudgment interest.

The following undisputed evidence was introduced at trial: Prior to May 28, 1982, defendant Ruby was married to defendant Degenhardt. During their marriage, the parties borrowed $20,000 from defendant Degenhard's parents, Glenwood and Allene Degenhardt

(the Degenhardts), as a downpayment on a home located in Steeleville which defendants purchased. This loan was not secured by a mortgage. Defendants borrowed the remaining $35,000 of the purchase price from the First National Bank of Steeleville (bank); and this indebtedness to the bank was secured by a mortgage on the premises purchased.

In a judgment of dissolution of marriage entered on May 28, 1982, defendants were ordered to sell the real estate in question, to discharge their indebtedness to the Degenhardts and the bank, and to divide any remaining proceeds. After unsuccessfully attempting to sell their home, defendants entered into a real estate listing contract with plaintiff. In this contract, defendants granted plaintiff the exclusive right to sell the marital home during the period from February 26, 1983, until August 28, 1983. Specifically, this contract provides in pertinent part:

"The [defendants] hereby agree to pay [plaintiff] for services rendered a commission of 6% of the agreed sale price [$62,000], subject to a minimum commission of $500.00, on procurement of a buyer who is 'ready, willing and able' to purchase the premises on terms herein contained or otherwise approved by the [defendants]. The commission is due and payable upon broker procuring a 'ready, willing and able' buyer or if the property is sold by the [defendants], another broker or anyone else during the time this agreement is in force. In the event of an exchange or trade [plaintiff] is permitted to represent and receive compensation from both parties. The undersigned agrees to pay [plaintiff] the above commission, based upon the last listed price, should the property be withdrawn from the market prior to expiration of this agreement."

By a warranty deed executed on August 30, 1983, and recorded on August 31, 1983, defendants conveyed the real estate in question to the Degenhardts. In consideration for this conveyance, the Degenhardts extinguished the debt owed to them by defendants and assumed the defendants' indebtedness to the bank.

The parties stipulated at trial that (1) plaintiff did not procure a "ready, willing and able" purchaser for the real estate, and (2) defendants did not withdraw the real estate from the market prior to the expiration of the listing contract. However, plaintiff maintained that she was entitled to a brokerage commission because defendants had sold the property to the Degenhardts.

At the conclusion of the proceedings, the trial court entered an order finding that defendants were obligated to pay a brokerage com-

mission to plaintiff because defendants had "sold the real estate \*\*\* to the [Degenhardts]" during the period of the listing contract. Applying the contractual commission rate of 6% to the agreed sale price of $62,000, the trial court ordered defendants to pay the sum of $3,720 to plaintiff. In addition, the trial court awarded prejudgment interest to plaintiff from the date of the sale of the real estate through the date of the judgment at the rate of 9% per annum.

On appeal, defendants concede that the listing contract executed by the parties created an exclusive right to sell, which stated in part that plaintiff was entitled to a commission if defendants' property was sold "by [defendants], another broker or anyone else during the time the [contract was] in force." We conclude, therefore, that plaintiff was entitled to a commission pursuant to her exclusive right to sell if defendants agreed to sell their property to the Degenhardts during the exclusive listing period, in spite of the fact that (1) plaintiff was not the procuring cause of the sale, and (2) defendants and the Degenhardts did not transform their agreement into writing until after the exclusive listing period expired. See *Bolger v. Danley Lumber Co.* (1979), 77 Ill. App. 3d 207, 210, 395 N.E.2d 1066, 1068-69.

Defendants argue that the trial court erred in finding that they agreed to sell their property to the Degenhardts during the exclusive listing period. In support of this contention, defendants rely upon the following evidence: Defendant Ruby testified that he did not agree to sell the property to the Degenhardts during the exclusive listing period. Defendant Degenhardt testified that she determined on the day after the expiration of the exclusive listing period that the property would be transferred to the Degenhardts. Glenwood Degenhardt testified that he did not inform the defendants that he wanted to purchase the property during the exclusive listing period. He further stated that he did not complete the loan application concerning the property until the day after the expiration of that period. Both Glenwood and Allene Degenhardt testified that the only reason they purchased the property was to protect the $20,000 loan which they had made to defendants. Plaintiff testified that she continued attempting to sell the property throughout the exclusive listing period.

The record also contains the following evidence: In a June 18, 1983, letter sent to plaintiff, defendant Ruby described defendants' outstanding indebtedness to the First National Bank of Steeleville and to the Degenhardts and stated: "Due to the fact that I have been out of work since September 1982 I can no longer meet my financial responsibilities \*\*\*. To protect their interests the Degenhards have graciously offered to take over the obligation of the [defendants' prop-

erty]." Plaintiff testified that she believed the property was sold on June 18, 1983. Moreover, although she admitted that she attempted to sell the property during the period from June 18, 1983, until the expiration of the exclusive listing period, plaintiff testified that she "always" continued her sales efforts until the date of the real estate closing because an agreement for the sale of real estate might "fall through" prior to that time.

Plaintiff further testified that on July 7, 1983, she met with defendant Ruby and others at a Steeleville restaurant in order to discuss plaintiff's commission. Plaintiff stated that during this meeting defendant Ruby informed her that the property had been sold to Glenwood Degenhardt but that Mr. Degenhardt refused to pay the commission.

Defendant Degenhardt testified that prior to the execution of the listing contract her parents (the Degenhardts) had agreed to purchase the property if a realtor was unable to procure a ready, willing and able buyer.

In a reply to a question from plaintiff's attorney on cross-examination, defendant Ruby stated that he had not told the truth in the June 18, 1983, letter when he informed plaintiff that the Degenhardts had "graciously offered" to assume defendants' indebtedness on the property.

It is not the function of a court of review to substitute its judgment for that of the trial court. The trial court was in the best position to observe the witnesses and to give consideration to the evidence presented. Accordingly, we will not disturb the trial court's decision unless it was contrary to the manifest weight of the evidence. *Salem National Bank v. Chapman* (1978), 64 Ill. App. 3d 625, 628, 381 N.E.2d 741, 744.

■ Here, defendants argue that they neither agreed to sell their property to the Degenhardts nor even discussed the sale of the property with the Degenhardts during the exclusive listing period. However, the record establishes that the Degenhardts completed the necessary loan applications concerning the property one day after the expiration of the exclusive listing period and that the warranty deed conveying the property to the Degenhardts was executed two days after the expiration of that period. Accordingly, after consideration of all the evidence contained in the record, we conclude that the trial court's finding that defendants sold their property to the Degenhardts on or before June 18, 1983, was not contrary to the manifest weight of the evidence.

Alternatively, defendants argue that the trial court erred in refus-

ing to admit parol evidence concerning the intention of the parties at the time they entered into the exclusive listing contract. Defendants note that (1) the primary object of the construction of a contract is to give legal effect to the intention of the parties, and (2) the term "sale," when used in a real estate listing contract, has no fixed or invariable meaning but must be interpreted in accordance with the manifest intention of the parties. Relying on *Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 732, 394 N.E.2d 1283, 1288, defendants argue that the listing contract in the case at bar is ambiguous as to whether the parties intended that plaintiff would receive a commission if defendants sold the property to the Degenhardts for an amount equal to defendants' outstanding indebtedness on the property. (76 Ill. App. 3d 725, 732, 394 N.E.2d 1283, 1288-89.) Defendants assert that, as a consequence, the trial court should have allowed them to introduce parol evidence to resolve this ambiguity. We do not agree.

We initially note that *Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 394 N.E.2d 1283, may be distinguished from the case at bar. In that case, the trial court dismissed a complaint filed by a real estate broker, finding that a deed in lieu of foreclosure was not a conveyance under the terms of an exclusive real estate brokerage agreement which would give rise to the defendant real estate owner's obligation to pay a commission. On appeal, the court rejected the broker's contention that the transfer of a deed in lieu of foreclosure is, in every instance, a "sale" which would entitle a broker to a commission. However, the court concluded that parol evidence was necessary to determine whether the parties to the agreement intended to make a distinction between (1) a sale to a third party for valuable consideration and (2) a sale by deed in lieu of foreclosure to the defendant, the real estate owner's mortgagee, for the satisfaction of the defendant's debts. Accordingly, the court reversed the trial court's order dismissing the broker's complaint.

In the instant case, the Degenhardts not only canceled the debts owed to them by defendants but also assumed defendants' indebtedness to the First National Bank of Steeleville. In *Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 394 N.E.2d 1283, there was no specific consideration for the conveyance other than the cancellation of a debt. Furthermore, in the case at bar, the defendants' indebtedness to the Degenhardts was not secured by a mortgage on the property in question. Therefore, the conveyance in the instant case, unlike the one in *Felbinger & Co.*, was not an involuntary transfer in lieu of mortgage foreclosure. Accordingly, the principles set forth in

*Felbinger & Co.* are not dispositive of the instant appeal.

■■ Defendants correctly recognize that a court, in construing a contract, is seeking to ascertain the intention of the parties. (*Felbinger & Co. v. Traiforos* (1979), 76 Ill. App. 3d 725, 732, 394 N.E.2d 1283, 1288.) However, in order to determine intent, a basic rule of construction requires that a court simply look to the contract as ultimately executed. Stated differently, when contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and no parol evidence may be considered to vary the meaning of the terms. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 219, 422 N.E.2d 879, 882.) Furthermore, whether or not an ambiguity exists in a contract is to be determined by the court as a matter of law. 97 Ill. App. 3d 215, 219, 422 N.E.2d 879, 882.

■■ The language of the listing contract in the case at bar is not ambiguous. The contract provides, in pertinent part, that plaintiff is entitled to a commission if the property in question was "sold by [defendants], another broker or anyone else." A "sale" of real property is ordinarily defined as a "contract whereby property is transferred from one person to another for a consideration of value." (Black's Law Dictionary 1503 (4th ed. 1968).) It is undisputed by the parties that (1) defendants' property was in fact transferred to the Degenhardts by a warranty deed, and (2) in consideration for this conveyance, the Degenhardts canceled the debt owed to them by defendants and assumed the remaining outstanding indebtedness on the property. Accordingly, we conclude that the trial court properly refused to allow the introduction of parol evidence and properly ordered defendants to pay a sum equal to the amount of the contractual brokerage commission to plaintiff.

■■ Defendants also maintain that the trial court erred in awarding statutory prejudgment interest to plaintiff. (Ill. Rev. Stat. 1983, ch. 17, par. 6402.) Specifically, defendants argue that the listing contract is not an "instrument of writing" within the meaning of this statute.

The foregoing statute provides in pertinent part:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." (Ill. Rev. Stat. 1983, ch. 17, par. 6402.)

In *Emerich v. Leviton* (1983), 117 Ill. App. 3d 832, 836, 454 N.E.2d 45, 48, the court determined that a broker who had an oral employment contract with a vendor of real estate was entitled to statutory

prejudgment interest where the vendor, vendee, and broker had each initialed a paragraph of a real estate contract which provided that vendor would pay a brokerage commission at closing.

In the instant case, the parties executed a listing contract which provided that "[t]he commission is due and payable *** if the property is sold by [defendants]." Accordingly, we conclude that the listing contract satisfied the statutory requirement of an "instrument in writing" and that plaintiff is entitled to statutory prejudgment interest for the 368-day period from the date of the sale of the property, June 18, 1983, through the date of entry of the trial court's judgment, June 21, 1984.

Defendants correctly point out, however, that the trial court erroneously computed prejudgment interest at an annual rate of 9%. Since the statutory rate is 5% per annum (Ill. Rev. Stat. 1983, ch. 17, par. 6402), we modify that portion of the trial court's order awarding prejudgment interest to plaintiff by reducing the amount of interest to which plaintiff is entitled from $334.80 to $187.53.

For the foregoing reasons, we affirm the judgment entered by the circuit court of Randolph County as herein modified.

Affirmed as modified.

JONES and KARNS, JJ., concur.