**Barry BASS, Plaintiff,**

v.

**John BANGA, Defendant.**

No. 85 C 10561.

United States District Court,
N.D. Illinois, E.D.

Feb. 27, 1987.

Richard Lee Stavins, Robbins, Rubinstein, Saloman & Greenblatt, Ltd., Chicago, Ill., for plaintiff.

Ronald M. Brown, Brown & Shinitzky, Chartered, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case involves a dispute about a local real estate broker's commission. Defendant John Banga, a long time resident of South Holland, Illinois, moved to Minnesota shortly before the events which gave rise to this suit, thus allowing plaintiff Barry Bass, the broker, to assert diversity jurisdiction. Both parties have moved for summary judgment. Banga's motion is denied, and Bass' motion is granted.

Banga owned two parking lots across the street from each other in the 600 block of South Wabash Avenue in Chicago. Allright Parking Chicago, Inc., which is not a party to this suit, leased the property from Banga, and its lease included a right of first refusal of any sale. Banga found it necessary to sell the lots by November 7, 1985 in order to redeem them from a foreclosure action. After trying one real estate broker without success, he signed an exclusive right-to-sell agreement with Bass running from August 13 to September 16, 1985. That agreement included the following provision:

> Seller agrees ... to pay a real estate brokerage commission of five percent of purchase price if a contract to purchase and sell the property is executed by Seller and Purchaser through the services and efforts of Realtor, Seller or by or through any other persons during the period of this agreement or if such contract to purchase and sell is executed within six months after termination of this agreement with a purchaser to whom it was offered during the period hereof. . . .

The agreement went on to specifically exclude any sale to a certain South Holland firm from coming within the terms of the agreement. No such exclusion of a sale to Allright, however, was written into the contract.

At some time shortly after the agreement went into effect (August 22, according to Bass' notes), Bass called Arthur Dordek, local representative of Allright, and mentioned that the lots were for sale for $1,100,000. Bass characterizes this communication as an offer. Dordek does not agree (Dep. at 15), although elsewhere he expresses the feeling that Bass was trying to sell the lots to Allright at that time (Dep. at 79–80). It is undisputed that Bass did not attempt to show Dordek the lots, but obviously no such showing was necessary since Allright had occupied them since 1983.

Bass made other efforts to sell the property. These continued well past the ostensible September 16 expiration date of the agreement, apparently with the encouragement of Banga. The efforts eventually produced a prospective buyer, a corporation from Indianapolis, which made an $820,000 offer that Banga rejected. Some further contact between Banga and that buyer took place, with Banga proposing a sale for $850,000 and that buyer countering with $835,000. Shortly thereafter Banga sold the property to Allright for $825,000. Bass now is suing for $41,250, representing the five percent commission to which he believes he is entitled under the agreement, plus statutory prejudgment interest.

Banga moves for summary judgment on several grounds. He points out, for example, that the sale did not occur within the time span of the written agreement, and cites *Uphoff v. Ulrich*, 2 Ill.App. 399 (1st Dist.1878), which denied a commission to a broker who had introduced the parties because the sale actually took place a few weeks after the broker's agreement had expired. However, while courts once were reluctant to grant a commission when any condition went unfulfilled during the express time limits of a broker's contract, *see* Note, *Broker's Right to Commission When Sale Is Consummated After Brokerage Contract Has Been Terminated*, 41 Chi.-Kent L.Rev. 92 (1964), that is no longer the law in Illinois. Commissions now

may be awarded for post-termination sales in a variety of circumstances. *See, e.g., Clifton-Strode, No. 2, Inc. v. Kent,* 110 Ill.App.3d 525, 442 N.E.2d 666, 66 Ill.Dec. 240 (3d Dist.1982).

■ Moreover, as Bass rightly points out, an extension of a brokerage agreement past its apparent expiration date can be inferred from the conduct of the parties to it:

> An implied contract exists in the situation where a property owner knows that the broker is endeavoring to effect a sale and expects to receive compensation for his services, and where the owner encourages the broker to aid in the sale and leads the broker to believe he will receive compensation.

*Hodgman, Inc. v. Feld,* 113 Ill.App.3d 423, 429, 447 N.E.2d 450, 454, 69 Ill.Dec. 233, 237 (2d Dist.1983); *see also Cantrell v. Kruck,* 25 Ill.App.3d 1060, 1064, 324 N.E.2d 260, 263 (2d Dist.1975). Given the evidence of Banga's knowledge of and encouragement of Bass' efforts to sell the property after September 16, Bass at least has raised a factual question as to whether or not the agreement was extended.

■ Banga also argues that Bass deserves no commission because he was not the "procuring cause" of the sale, citing *Camp v. Hollis,* 332 Ill.App. 60, 74 N.E.2d 31 (1st Dist.1947). In *Camp,* the court on that ground turned away a group of brokers who sought, on the meager basis of a single meeting with its owner and an alleged oral contract, a commission of over $600,000 on the sale of Chicago's Palmer House Hotel. Banga's contention, however, confuses one line of broker cases with another. One of the principles which courts created to avoid the harshness of the rule denying a broker a commission when he had brought the parties together but the actual sale fell outside the literal terms of his contract was to award a commission, regardless of unfulfilled conditions, if the broker was the "procuring cause" of the sale. *See Broker's Right, supra,* 41 Chi.-Kent L.Rev. at 95–99. That principle, however, obviously has no relevance when the sale does fall within the literal terms of the broker's contract, and Illinois courts enforce the terms of the contract regardless of whether the broker's acts procured the sale or not. *Hammel v. Ruby,* 139 Ill.App.3d 241, 244, 487 N.E.2d 409, 412, 93 Ill.Dec. 742, 745 (5th Dist. 1985); *Bolger v. Danley Lumber Co.,* 77 Ill.App.3d 207, 210, 395 N.E.2d 1066, 1069, 32 Ill.Dec. 685, 688 (1st Dist.1979).

■ We do not understand Bass to seriously contend that he was the procuring cause of the sale to Allright where, as Banga vigorously points out, he neither introduced Banga to Allright nor even was the first person to inform Allright that Banga wanted to sell the lots it leased from him. Rather, Bass simply asserts the terms of his contract: he gets a commission if a party to whom he offered the property purchases it within six months; he offered it to Allright; Allright bought it within six months. In *Kokinis v. Kotrich,* 81 Ill.2d 151, 407 N.E.2d 43, 40 Ill.Dec. 812 (1980), a broker established a right to recover a commission even though he neither introduced the parties nor was the first to inform the buyer that the property was for sale. His agreement included a term paying a commission if anyone to whom the broker had "submitted" the property ended up purchasing it. In that case, the eventual buyer had responded to an advertisement placed by the broker and the broker sent him a flyer about the property. On learning the address of the property from the flyer, the buyer realized that another broker had previously shown him the same property. The Illinois Supreme Court, reversing the trial court's judgment for the defendant purchaser at trial after the broker had presented his case, held that the broker's evidence had tended to show that he had "submitted" the property to the eventual buyer within the terms of the contract. Thus he could recover a commission from the seller. 81 Ill.2d at 156, 407 N.E.2d at 45–46, 40 Ill.Dec. at 814–815, *aff'g Kokinis v. Kotrich,* 74 Ill.App.3d 224, 392 N.E.2d 697, 30 Ill.Dec. 42 (1st Dist. 1979). Regardless of whether Bass was the procuring cause of the sale or not, if he

"offered" the lots to Allright he can recover under the contract.

Banga resists that conclusion by again citing *Camp*, contending that the case stands for the proposition that any contract term which would award a broker a commission even though he was not the procuring cause of the sale must be "expressed in clear and unmistakable language." 332 Ill. App. at 68, 74 N.E.2d at 35. Banga contends that the language in the agreement with Bass contains an ambiguity: the antecedent of "it" in the phrase "to whom it was offered" could just as well be "contract to purchase and sell" as "the property," since the former phrase is placed more closely in the clause to "it". Thus the term is not "clear." Moreover, Bass never offered a contract to purchase and sell to Allright. Therefore, says Banga, he cannot recover.

■ In the light of subsequent Illinois case law, this court doubts that Banga is reading *Camp* correctly. The *Camp* court was dealing with allegations of an oral agreement for what, in 1947, it regarded as an "unusual contract." 332 Ill.App. at 69–70, 74 N.E.2d at 35–36. Today such a term in a broker's contract is far from unusual, and recent decisions make no extra demand for clear and unmistakable language. *See Kokinis*, 81 Ill.2d at 155, 407 N.E.2d at 45, 40 Ill.Dec. at 814; *id.*, 74 Ill.App.3d at 230, 392 N.E.2d at 701–702, 30 Ill.Dec. at 46–47; *Hammel*, 139 Ill.App.3d at 244, 487 N.E.2d at 411–412, 93 Ill.Dec. at 744–745; *Bolger*, 77 Ill.App.3d at 210, 395 N.E.2d at 1069, 32 Ill.Dec. at 688. However, we find no ambiguity in any event. The contract in *Kokinis* promised a commission

> ... if the property is sold to anyone on behalf thereof to whom it was submitted, or sold after termination of this agreement to a purchaser to whom it was submitted or shown by [the plaintiff] ... during the term of this agreement.

74 Ill.App.3d at 229, 392 N.E.2d at 700, 30 Ill.Dec. at 45. The court expressly found no ambiguity in that language; its plain and obvious meaning was to entitle that plaintiff to a commission if someone to whom he submitted the property eventually bought it, regardless of whether the broker actually caused the sale. *Id.* at 230, 392 N.E.2d at 702, 30 Ill.Dec. at 47. We similarly find no ambiguity here. The phrase in question is "*such* contract to purchase and sell," referring back to the earlier "contract to purchase and sell *the property* " (emphasis added). The plain meaning of the term is to entitle Bass to a commission if anyone to whom he offered the property purchased it within six months. In short, none of Banga's arguments provide grounds for granting him summary judgment.

■ Bass' motion obviously stands on much firmer ground. He has set forth facts which would support an implied extension of time on the agreement, thus arguably bringing the sale within the clause granting a commission on any sale during the life of the agreement. However, though Banga's case is thin, on this point he offers enough to survive summary judgment. *Cf. Prudential Insurance Company v. Curt Bullock Builders, Inc.*, 626 F.Supp. 159, 166 (N.D.Ill.1985). The test for implying an extension of the contract is fact-intensive. A trier of fact ought to determine whether Banga was still encouraging Bass at a point in time sufficiently close to the sale that the sale came within an extended time span of the agreement, or whether at some point the facts are better characterized as Bass forcing his attentions on Banga.

■ Banga has not, however, shown any genuine dispute about whether Bass has a right to collect his commission under the term covering a sale of the property within six months to "a purchaser to whom it was offered." The Illinois Appellate Court in *Kokinis* considered "offer" to be a synonym of "submit." 74 Ill.App.3d at 231, 392 N.E.2d at 702, 30 Ill.Dec. at 47. Both it and the Illinois Supreme Court found that merely mailing a flyer identifying the property and indicating that it was for sale constituted a "submission," *i.e.* an offering of the property for sale. *Kokinis*, 81 Ill.2d at 156, 407 N.E.2d at 45–46, 40 Ill.Dec. at 814–815. As the Appellate Court pointed out, if the seller had wanted to exclude a

sale to persons who had learned of the property through means other than that broker, he could have written a clause to that effect into the agreement. 74 Ill. App.3d at 232, 392 N.E.2d at 703, 30 Ill. Dec. at 48.

█ Similarly, if Banga had intended to exclude a sale to Allright from his agreement with Bass on the basis of Allright's prior acquaintance with the property, he could have listed Allright in an exclusion clause, alongside the South Holland firm which he did list. Here it is undisputed that Bass called the agent of Allright, Dordek. During that call he identified the specific property, indicated that it was for sale, and mentioned a price. Dordek does not characterize that communication as an offer, but that is not decisive since this court decides its legal characterization. Moreover, Dordek felt at the time that with the call Bass was trying to sell Allright the lots. By the standards of *Kokinis,* the call was an offer and Allright was a purchaser to whom Bass had offered the property during the period of the agreement. Since Allright then purchased the property within six months of September 16, under the terms of the agreement Bass is entitled to a commission.

## CONCLUSION

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. Judgment is entered for plaintiff in the amount of $41,-250, plus interest at the statutory rate of five per cent per annum from November 5, 1985.