(No. 32042.—

HARVEY WILSON *et al.,* Appellees, *vs.* EFFIE SINGLETON *et al.,* Appellants.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

LOEFF & PANTER, of Chicago, and HOFFMANN & HOFFMANN, of Springfield, for appellants.

JENKINS, OLSEN & CANTRILL, and ROY M. RHODES, both of Springfield, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This appeal seeks to reverse a judgment of the circuit court of Sangamon County in favor of the plaintiffs. The case arose under a complaint for declaratory judgment to determine whether or not a power of sale, vested in a life tenant under a will, had been effectively exercised, and, if exercised, to determine the persons entitled to the proceeds of sale.

There is no dispute as to any fact. The plaintiffs, Harry, John H., and Ralph Wilson, are the heirs-at-law of the testatrix, Celia Lambert. Plaintiff Eva Irene Suggs is the executrix of the last will and testament of John Slaughter, now deceased, the life tenant who was vested with the power of sale. Harry Wilson is also the personal representative of the testatrix who owned the equitable interest in the real estate and in whose will the power of sale was created.

Defendants Effie Singleton and Ella Rochester are both residuary and specific legatees under the will of Celia Lambert and are her two remaining heirs-at-law. Defendant Irvin Dunas is the tenant of the property in question, with conditional option to purchase the property under the terms of a lease. Defendant David Olsen was the high bidder on the property when it was sold at auction, and the defendant Security Federal Savings and Loan Association holds the legal title subject to a contract of sale to decedent, Celia Lambert. The last two named defendants have no further interest in the outcome of this suit.

Celia Lambert entered into a contract to purchase the property in question on February 1, 1941, from the defendant Savings and Loan Association. She was adjudged incompetent and letters were issued September 7, 1948, to John H. Wilson as conservator of her estate. By a written lease of the same date, the conservator leased the premises to defendant Irvin Dunas, for ten years. This lease provided that the lessee was granted an option to purchase the

premises in case a sale of them should become desirable. The lease provided for notice to Dunas of any *bona fide* offer and he then had thirty days in which to meet that offer if he so desired. The lease stated specifically that the intent and purpose of the lease was to give to Dunas the first opportunity to purchase whenever any sale was contemplated. The lease was recorded.

Celia Lambert had executed her last will and testament during her competency. By its terms she gave the property involved in this proceeding to John Slaughter for life with "full power to sell this real estate and give a good deed for the same, as though I would if I were living myself." The will further provided that in case Slaughter exercised his power of sale he need not account to anyone for the sale price, but that if he did not exercise the power, then, upon his death, the property was to be sold and the proceeds were to be divided, $500 to each of the plaintiffs Wilson, and the balance to be divided equally between the defendants Singleton and Rochester. Celia Lambert died December 9, 1948.

A complaint to set aside this will was filed in the circuit court and was dismissed nine months after the will was admitted to probate. In this proceeding a stipulation was entered into between Slaughter and counsel for all the real parties in interest here, except Effie Singleton. In that stipulation it was noted that she disclaimed herself as a party complainant and asked to be dismissed from the suit. This stipulation provided that the will contest be dismissed and that Slaughter sell the property and divide the proceeds, one third to himself and two thirds to the parties represented by counsel. This includes the plaintiffs Wilson, and the defendant Rochester.

March 30, 1950, Slaughter held a public sale wherein the property was auctioned off to defendant David Olsen, for $28,550. Prospective purchasers had been notified of the rights which Dunas held under the lease, and had also

been told that Dunas would not require the full 30 days to which he was entitled to make his decision. On the date of sale, Slaughter executed a warranty deed to Olsen, and Olsen, in return, gave a check in down payment of $4282.50. The deed recited, "Subject to a certain lease in favor of Dr. Irvin Dunas, and subject to a vendor's lien in the amount of $24,267.50 which amount is to be without interest until grantee shall have opportunity to have title examined and its merchantability determined by Grantee, whereupon vendor's lien shall be paid by vendee."

Notice, under the terms of the lease, was given to Dunas on March 30, 1950. Slaughter died on April 3, 1950, and on April 17, 1950, Dunas gave notice of his intention to exercise the option in his lease.

The lower court found that Slaughter validly exercised the power of sale to Olsen, but that Dunas, as lessee, served the requisite notice under the lease which entitled him to a deed of conveyance. The court then ordered that Dunas receive the requisite conveyances from Slaughter's executor, from Olsen, and from the Savings and Loan Association, and that the proceeds of the sale be divided in accordance with the stipulation.

The defendants-appellants contend that the court erred in finding that Slaughter validly exercised the power of sale under Celia Lambert's will, arguing that the power of sale was subject to the terms of the lease granting Dunas the option to purchase and that the power terminated on Slaughter's death without the option having been exercised.

First, appellants argue that the power of sale was not effectively or completely exercised, as the lease containing the option to Dunas is binding on the premises and prevented the sale to the bidder at auction. Secondly, appellants urge that no sale was made to the bidder at auction as the purchase price was not paid, title was not merchantable, lessee gave notice of his intention to purchase, and

the down payment of Olsen was returned to the bidder and that deed surrendered. Lastly, it is said that there was no acceptance by Dunas prior to the expiration of the offer to sell by the death of Slaughter.

Countering these arguments plaintiffs-appellees say that by the terms of the will Slaughter was given a power to dispose of the property at such time and on such terms and conditions as he saw fit; that the lease by the conservator to Dunas was not the act of Celia Lambert, but was the act of the probate court; that the leasehold is only incidental in this proceeding to a decision on the exercise of the power; that whether or not Slaughter exercised the power must be determined from his intention; that Slaughter, by binding himself in the stipulation in the will contest and by making a contract of sale and delivering a deed to Olsen and notifying Dunas, completely exercised the power given him.

The argument of the defendants would restrict the right of Slaughter to sell to the right of Dunas to purchase under the option. The argument follows the lines that the lease was recorded and was in effect prior to the date the will became effective; that Dunas was in possession on the date of the sale and that Olsen was charged and had actual knowledge of Dunas' rights; that the conditional option is a covenant running with the land and as such was binding on Slaughter whose right to exercise the power of sale was subject to valid covenants, including the qualified option of Dunas; that, according to the rule of *Hayes* v. *O'Brien*, 149 Ill. 403, this right under the option was specifically enforceable by Dunas and, under that ruling, a deed to a third party, in a situation similar to that before us, will not be allowed to stand. Defendants continue to urge that the actual sale here was to Olsen, which, in fact, was only a bid which was nothing more nor less than an offer to buy; that this is not an exercise of

the power as there was no authority to sell to Olsen and, since Slaughter died before the sale to Dunas, there was no sale by Slaughter.

The speciousness of this argument should be apparent at a glance. Simply speaking, the testatrix gave to Slaughter the right to sell "the same as though I would if I were living myself." A lease was in effect giving to the lessee the right to purchase if he met the terms and conditions of a *bona fide* third-party purchaser. All the parties here were, originally, parties to a will contest where it was stipulated that a sale should be made by the life tenant. An auction was held whereby a value of the property was determined by the bidder Olsen. The terms of the lease were followed, the lessee was given notice, and he determined to buy.

As was said in *Merchants' Loan and Trust Co.* v. *Patterson,* 308 Ill. 519, quoting from earlier cases, "The main point is to arrive at the intention and object of the donee of the power in the instrument of execution, and that being once ascertained, effect is given to it accordingly. If the donee of the power intends to execute and the mode be in other respects unexceptionable, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative."

What do the facts disclose here as to intention? The least that can be said is that all parties intended a sale during Slaughter's, the life tenant's, lifetime. That was the only thing contemplated by the stipulation during the contest of Celia Lambert's will. It is obvious that every step in the proceeding was designed to satisfy the terms of the will and the lease and still have a resultant sale.

Olsen entered into the purchase of this property subject to the terms of the lease, and the lease itself was mentioned in the deed which was given him. Two factors had to occur before Olsen was certain of receiving good title

to the property, but at the time he made his bid he was conversant with both. The lessee had to refuse to purchase, and he had to receive evidence of merchantable title. Yet, should these two factors occur, it cannot be argued that Olsen was not liable for the purchase of the land or that he could not enforce his purchase. He had done everything he could do to ensure the purchase until after the passage of 30 days, the time given the lessee to exercise his option.

There never could be an exercise of the option under the terms of the lease until a *bona fide* purchaser had set the price and terms for the exercise of that option. Without the sale to Olsen, then, there could never have been an exercise of the option by Dunas. As was said in *Hayes v. O'Brien,* 149 Ill. 403, cited by both parties, "Here, the parties, by their contract, prescribed a mode by which the price at which the lessee was to purchase was definitely ascertainable. If the lessor received an offer for the land which he was willing to accept, that became the price at which the lessee might purchase, and, if the lessee accepted it, at which the lessor was bound to convey." Looked at in this light, we see that every step taken in the instant cause satisfies the rule and the underlying reason behind this language. There is no effort to enforce the deed to the third party, inasmuch as Dunas exercised the option within the time limited by the lease. It could not be contended that, if the lessee refused to exercise his option, a sale had not been made to Olsen.

Little argument is made as to the effect of the stipulation entered into by the parties at the time of the will contest. The stipulation is clear that all parties hereto, except one who divorced herself from any consideration under its terms, asked for, contemplated, and agreed to a sale. Had a sale been completely consummated that very day these parties could not complain that its terms were not carried out. The mere fact that the procedures involved in carrying out that agreement took more time, and the fact that

the life tenant, who was given the duty of making the sale, died during the steps necessary to consummate the sale, do not render the agreement invalid. As a matter of record, that stipulation bound Slaughter, his heirs and assigns.

In view of our decision that this was a sale made in accordance with the procedures involved under the particular facts of this case, it is not necessary to discuss the further arguments or citations of either party. The procedures followed in this situation are not unusual and give rise to no unusual precepts of law. See *Stoller* v. *Doyle*, 257 Ill. 369.

*Judgment affirmed.*