ARMANDO SUSMANO, M.D., Plaintiff-Appellant, *v.* ASSOCIATED INTERNISTS OF CHICAGO, LTD., *et al.*, Defendants.—(MOUNT SINAI HOSPITAL MEDICAL CENTER OF CHICAGO, Defendant-Appellee.)

First District (3rd Division)    No. 80-1975

Opinion filed June 3, 1981.

Donald L. Johnson and William G. Scher, both of Marks, Katz, Johnson, Randall, Weinberg & Blatt, of Chicago, for appellant.

Gerald D. Chiss and Stephen M. Dorfman, both of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, of Chicago, for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Armando Susmano, M.D., brought this action against Mount Sinai Hospital Medical Center of Chicago and Associated Internists of Chicago, Ltd., to recover damages for allegedly wrongful termination of his written employment contract. Mount Sinai sought summary judgment on count III of plaintiff's complaint, the only count directed against it. After considering the pleadings, affidavit, exhibits, and deposition, and hearing arguments of counsel, the trial court entered summary judgment on count III in favor of Mount Sinai. On appeal plaintiff contends that summary judgment was improperly granted because genuine issues of material fact existed. (The action against Associated Internists is still pending and that party is not involved in this appeal.) The pertinent facts are as follows.

In June or July, 1976, plaintiff, a practicing physician, entered into negotiations with Dr. Phillip Freedman, chairman of Mount Sinai's department of medicine and president of Associated Internists, concerning an appointment as director of the division of cardiology of Mount Sinai's department of medicine. Dr. Freedman sent plaintiff a letter dated August 2, 1976, confirming these earlier discussions; outlining plaintiff's responsibilities for patient care, teaching, and research; establishing an

annual "guaranteed" salary of $70,000, to be paid in equal shares by Mount Sinai and "the group" (Associated Internists); and delineating the fringe benefits offered by both Mount Sinai and the group. The letter was written on Mount Sinai's stationery and signed by Dr. Freedman, as "Chairman, Department of Medicine." Plaintiff next received a letter dated August 3, 1976, from Ruth M. Rothstein, Mount Sinai's vice-president and executive director, and Dr. Freedman, which confirmed plaintiff's appointment as director of Mount Sinai's division of cardiology, effective January 1, 1977, and discussed his responsibilities. The letter also reaffirmed the base annual salary of $70,000, to be "contributed by [Mount Sinai] (for teaching and administration) and Associated Internists (for patient care)." This correspondence, also on Mount Sinai's stationery, was executed by Dr. Freedman in his dual capacity as chairman of Mount Sinai's department of medicine and president of Associated Internists. To confirm acceptance of the position, plaintiff signed and returned the letter.

On January 1, 1977, plaintiff and Associated Internists, by its president, Dr. Freedman, executed a 16-page document entitled "Associated Internists of Chicago, Ltd., Employment Contract." The agreement designated plaintiff as the "employee" and Associated Internists as the "employer," and set forth the terms and conditions of their employment relationship. Compensation was fixed at $35,000 per year. Pursuant to the agreement, plaintiff was employed in the customary practice of medicine in which Associated Internists was engaged. Either plaintiff or Associated Internists could terminate the contract upon 60 days' written notice to the other party. Additionally, the contract would terminate immediately upon the occurrence of certain events including the following:

"[17](b) If Employee is no longer a member of * * * the Department of Medicine of Mount Sinai Hospital Medical Center of Chicago * * *."

Additionally, the agreement provided:

"This Contract shall and hereby does terminate, cancel and supersede any and all other written and verbal agreements between the parties hereto, relating to or in any way connected with the employment of Employee by Employer."

Following discussions between counsel for plaintiff and Associated Internists, plaintiff received a letter from Associated Internists, also dated January 1, 1977, which referred to the employment contract. The letter deleted a paragraph from the agreement, and clarified that the $35,000 salary was exclusive of the amount to be paid by Mount Sinai. This correspondence, written on Associated Internists' stationery, was signed by Dr. Freedman as president; plaintiff signed the letter indicating his approval.

On February 15, 1978, Associated Internists, through Dr. Freedman, terminated plaintiff's employment contract as of that date. Plaintiff instituted this suit against Associated Internists and Mount Sinai claiming that the reasons given for termination were false; that the termination was made without compliance with the 60-day notice provision; and that as a consequence of the wrongful termination, he was deprived of income for that 60-day period. The complaint also alleged that the January 1, 1977, employment contract was modified and amended by the letters of August 3, 1976, and January 1, 1977. In count III, plaintiff charged that Mount Sinai knew or should have known that his termination by Associated Internists without the requisite 60 days was wrongful and that, having failed to remit his salary for that 60-day period, Mount Sinai owed him $5,760. Mount Sinai filed an answer denying that the August correspondence amended or modified the later agreement between plaintiff and Associated Internists.

Subsequently, Mount Sinai moved for summary judgment alleging that by the correspondence of August 2 and 3, 1976, plaintiff was appointed director of cardiology at Mount Sinai for an indefinite term beginning January 1, 1977; that the employment relationship was terminable at will by either party; that the August letters formed the sole contract between plaintiff and Mount Sinai; and that Mount Sinai did not review, approve, acquiesce in, or agree to the provisions of the January 1, 1977, contract. In a supporting affidavit, Rothstein swore to the foregoing assertions contained in Mount Sinai's motion for summary judgment.

In his response, plaintiff maintained that all four writings constituted a single transaction; that all the writings were negotiated and executed by Dr. Freedman; and that all the writings refer to the same subject matter. Plaintiff also claimed that Rothstein's affidavit contained improper conclusions of law. Plaintiff attached a copy of his own deposition in which he stated that during negotiations, Dr. Freedman was acting as a representative of both Mount Sinai and Associated Internists and negotiated the terms of the August and January documents as a package. Although plaintiff was not represented by counsel when he signed the August letter, his attorney did review the January agreement. After a hearing on the motion, the trial court granted Mount Sinai's motion for summary judgment.

A motion for summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits or exhibits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57; *Hernandez v. Trimarc Corp.* (1976), 38 Ill. App. 3d 1004, 350 N.E.2d 202.) A triable issue precluding summary

judgment exists where there is a dispute as to material facts or where, the material facts being undisputed, reasonable persons might draw different inferences from the facts. (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 395 N.E.2d 6; *Wallace v. Smith* (1979), 75 Ill. App. 3d 739, 394 N.E.2d 665.) Summary judgment provides a means of disposing of cases with dispatch, but is a drastic method and should be allowed only when the right of the moving party is clear and free from doubt. (*Lind v. Zekman* (1979), 77 Ill. App. 3d 432, 395 N.E.2d 964; *Interlake, Inc. v. Harris Trust & Savings Bank* (1978), 57 Ill. App. 3d 524, 373 N.E.2d 413.) In determining whether a genuine issue of material fact exists, the court must construe the pleadings, depositions and affidavits most strictly against the moving party and most liberally in favor of the opponent. *Kolakowski v. Voris.*

Plaintiff initially argues that there was an issue of material fact as to whether Mount Sinai was bound by the employment contract executed by plaintiff and Associated Internists on January 1, 1977. Plaintiff was employed by Mount Sinai; the August correspondence confirming plaintiff's appointment as director of cardiology created such employment relationship. The August letter did not specify any term of employment and did not contain any provision for 60 days' notice upon termination. The January employment contract executed by Associated Internists as employer and plaintiff as employee set forth the 60-day notice provision upon which plaintiff bases his claim for recovery. On the face of the January agreement, Mount Sinai is not designated as an employer, nor does it appear as a signatory. Plaintiff urges, however, that certain ambiguities in the contract raise an issue of fact as to whether it binds Mount Sinai.

In the construction of a contract, the court is seeking to ascertain the intention of the parties. (*Fox v. Inter-State Assurance Co.* (1980), 84 Ill. App. 3d 512, 405 N.E.2d 873.) When contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and no parol or extrinsic evidence may be considered to vary the meaning of the terms. (*Board of Education v. Chicago Teachers Union* (1980), 89 Ill. App. 3d 861, 412 N.E.2d 587; see *Titchener v. Avery Coonley School* (1976), 39 Ill. App. 3d 871, 350 N.E.2d 502.) Whether or not an ambiguity exists in a contract is to be determined by the court as a matter of law. (*Board of Education v. Chicago Teachers Union.*) A contract is ambiguous where the language used is reasonably susceptible to more than one meaning. *White v. White* (1978), 62 Ill. App. 3d 375, 378 N.E.2d 1255.

Plaintiff maintains that contractual references to Mount Sinai and Dr. Freedman's affixed signature create an ambiguity as to the interrelationship of Associated Internists and Mount Sinai, thereby requiring resort

to extrinsic evidence. Mount Sinai counters that the agreement refers to it only in an exclusionary sense. Paragraph 5 of the contract reads, in relevant part:

"Other than Employee's duties in connection with being on the faculty of the Rush Medical School * * * and as a member of the Department of Medicine of Mount Sinai Hospital Medical Center of Chicago * * *, Employee shall not engage in the practice of medicine except as an employee of Employer unless otherwise authorized by the President."

Another provision recites that immediate termination would occur if plaintiff were no longer a member of Mount Sinai's department of medicine. Paragraph 11 provides that all fees received by plaintiff belong to Associated Internists, excluding salaries paid to plaintiff as a staff member of Mount Sinai and Rush. Plaintiff also points to the amending letter of January 1, 1977, clarifying that the $35,000 salary fixed by the contract was exclusive of the compensation to be paid by Mount Sinai. It is further suggested that Dr. Freedman's signature on the January writings and letter presents an ambiguity inasmuch as he occupied a position with Associated Internists and Mount Sinai, and had conducted negotiations with plaintiff on behalf of both organizations.

We perceive the language in the January writings to be clear and unambiguous. The plain import of the language employed is that the salary arrangement with Associated Internists is distinct and separate from Mount Sinai's contribution; that plaintiff may render services to Mount Sinai in addition to practicing medicine on behalf of Associated Internists; and that his employment relationship with Associated Internists was contingent, in part, upon his continued membership on Mount Sinai's staff. None of these references, read either alone or in the context of the entire agreement, purport to bind Mount Sinai to the terms and conditions contained in the contract. Rather, the references operate to distinguish the obligations of the two entities and to exclude Mount Sinai from the scope of the contract. Additionally, plaintiff's amended complaint recognizes that Mount Sinai and Associated Internists are separate entities. Similarly, the writings reflect no ambiguity as to the capacity in which Dr. Freedman executed the documents. Although Dr. Freedman may have negotiated or signed the earlier writings in his dual capacity, he clearly executed the January contract solely as president of Associated Internists.

■■ In sum, the employment contract executed in January is unambiguous as to the object, extent and especially the identity of the obligated parties. In his deposition, plaintiff stated that when he signed the contract he had read and understood its provisions and that his counsel reviewed the document. Finding no ambiguity in the language of the contract, extrinsic

evidence may not be considered to contravene or vary the terms of the agreement to include Mount Sinai, a stranger to the contract, as an "employer" or to obligate it to comply with the 60-day notice provision. See generally *World Insurance Co. v. Smith* (1975), 28 Ill. App. 3d 1022, 329 N.E.2d 518; *P & O Banking Corp. v. Wurm Brothers Co.* (1935), 282 Ill. App. 560.

■■ Plaintiff next contends that, based upon the interrelated contents and cross-references to salary, fringe benefits, and effective starting date in the August and January writings, a factual issue rises as to whether the employment agreement between plaintiff and Mount Sinai encompasses all four instruments. Relying upon *Esmay v. Gorton* (1857), 18 Ill. 483, and *H. B. G. Corp. v. Houbolt* (1977), 51 Ill. App. 3d 955, 367 N.E.2d 432, plaintiff maintains that where several different writings are executed by the parties at different times, the court may view all the documents as a whole in determining the conditions of the contract. Such rule is inapplicable here inasmuch as the writings sought to be construed as a single contract were not executed by the same parties. (See *Sudeikis v. Chicago Transit Authority* (1980), 81 Ill. App. 3d 838, 401 N.E.2d 1114.) Moreover, unlike *H. B. G. Corp. v. Houbolt*, the language of the August agreement did not contemplate or mandate the essential terms of the subsequent, more detailed January agreement. Nothing in the four documents suggests that the writings must be connected to disclose the terms of plaintiff's and Mount Sinai's employment relationship. Rather than reveal one tripartite transaction between plaintiff, Mount Sinai and Associated Internists, as plaintiff claims, the documents evidence two separate, distinct employment relationships.

■■ Plaintiff also argues that summary judgment was inappropriate because it was based, in part, upon improper conclusions in Rothstein's affidavit. That the August letters were the only agreement Mount Sinai entered into with plaintiff and that Mount Sinai did not review or approve the January agreements are matters within Rothstein's personal knowledge as an executive of Mount Sinai.

■■ We conclude that there was no genuine issue of material fact as to whether Mount Sinai was bound by the 60-day-notice provision set forth in the January 1, 1977, employment contract. The August letters constituted the only employment agreement between plaintiff and Mount Sinai. No definite term of employment having been specified therein, their employment agreement is presumed to be terminable at will by either party without liability. (*Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 327 N.E.2d 346.) Summary judgment in favor of Mount Sinai was properly granted.

For the aforementioned reasons, the order of the circuit court of

Cook County granting summary judgment in favor of Mount Sinai on count III of plaintiff's amended complaint is affirmed.

Judgment affirmed.

McGILLICUDDY and WHITE, JJ., concur.