MARQUETTE NATIONAL BANK, Trustee, Plaintiff-Appellant, *v.* WALGREEN COMPANY, Defendant-Appellee.

First District (3rd Division) No. 83—2534

Opinion filed July 25, 1984.

McCarthy, Duffy, Neidhart & Snakard, of Chicago (Stephen A. Snakard, Richard J. Witry, and Anne M. Scheurich, of counsel), for appellant.

Allan M. Resnick, of Deerfield, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Marquette National Bank, as land trustee, brought this action seeking a declaration of its rights to rental income under a lease between its predecessor in title and defendant Walgreen Company. The trial court granted defendant's motion for summary judgment and denied a similar motion by plaintiff. Plaintiff appeals.

In 1949, plaintiff's predecessor in title and defendant entered into an agreement to lease the premises at 6300 South Western Avenue in Chicago. The lease was extended and modified in 1965.

Under the terms of the lease, the rent is based on a fixed monthly sum and specified percentages of cash receipts of sales. Paragraph 2 of the amended lease provides in pertinent part:

"2. For and during the further extended period provided herein, Tenant shall pay rent as follows:

(a) A fixed minimum rent in the amount of $1,250.00 per month, payable on the first day of each and every month in advance;

(b) If a sum equal to -

3 1/4% of the cash receipts of sales, as defined in said lease

(and also excluding receipts from sale of cigarettes), up to and including $700,000.00,

plus 3% of such cash receipts of sales in excess of $700,000.00 up to and including $1,000,000.00,

plus 2% of such cash receipts of sales in excess of $1,000,000.00,

made by Tenant in the operation of Tenant's store on *said leased premises* in the twelve months ending February 28, 1967 and in each twelve months period thereafter, shall exceed the total fixed rents under subparagraph (a) above for each such period, *then and in such event* and on or before each March 25 next succeeding, Tenant shall pay to Landlord the amount of such excess as additional rent." (Emphasis added.)

The term "cash receipts of sales" was defined as "the total amount of all receipts from sales of drugs, food, drinks, goods, wares and merchandise of every sort whatsoever made by Tenant in the operation of Tenant's drug store *on said leased premises* \*\*\*." (Emphasis added.) Under the lease, defendant was required to provide to the landlord an annual statement detailing its monthly cash receipts of sales. The lease also allows defendant to use the premises for "any lawful purpose." Paragraph 10 allows defendant to assign the lease and sublet the leased premises, although defendant would remain liable for the payment of rent and the performance of the obligations under the lease.

Defendant operated a drug store on the leased premises until October 1981. After closing that store, it opened another drug store at 6200 South Western Avenue, one block north of its first location. In the five years prior to vacating the leased premises, defendant had made rent payments ranging from $32,000 to over $43,000 per year. Over 50% of the total rent paid by defendant was based on cash receipts of sales. Defendant continued paying the minimum monthly rent of $1,250 while the premises were vacant.

In July 1982, defendant sublet the subject premises to Volume Shoe Corporation for the operation of a retail shoe store. Volume pays $2,000 per month rent to defendant. Plaintiff demanded, in addition to the minimum rent, percentage rent based on defendant's cash receipts of sales at its new location. Defendant paid only the minimum rent, maintaining that Volume Shoe's sales were not sufficient to trigger the percentage rent on cash receipts of sales, and that defendant's sales figures could not be used since it had sublet the premises.

Plaintiff filed this action alleging a breach of the terms of the lease. It sought a judgment for $60,000, the minimum monthly rent

due until the end of the leasing period, and a declaration that it was entitled to percentage rents based on defendant's past sales on the leased premises or its current sales at the new location. Relying on the decision in *Chicago Title & Trust Co. v. Southland Corp.* (1982), 111 Ill. App. 3d 67, 443 N.E.2d 294, the trial court found that plaintiff had no claim for percentage rent based on defendant's sales after defendant sublet the premises. On appeal, plaintiff contends that the trial court erred in granting summary judgment because the terms of the lease clearly require that the percentage rents are to be based only on defendant's sales.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.) Construction of the terms of a contract presents an issue of law for the court. (*Advertising Checking Bureau, Inc. v. Canal-Randolph Associates* (1981), 101 Ill. App. 3d 140, 427 N.E.2d 1039.) Here, the parties are in agreement that there is no genuine issue as to any material fact. At issue is whether plaintiff is entitled to percentage rents from defendant, based on defendant's cash receipts of sales in the past on the leased premises or current sales at its new location, when defendant has exercised its right under the lease to sublet the premises.

In construing a lease, the instrument is considered in its entirety. (*One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 326 N.E.2d 400.) The primary objective is to determine and give effect to the intentions of the parties. (*Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 424 N.E.2d 56.) Where the terms are clear and unambiguous, they will be given their natural and ordinary meaning. (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 422 N.E.2d 879.) The contract must be enforced as written, and a reviewing court will not rewrite the contract under the guise of construction. *Stull v. Hicks* (1978), 59 Ill. App. 3d 665, 375 N.E.2d 981.

Plaintiff initially contends that under the lease, rent, by clear definition, includes defendant's sales of drugs and other merchandise in defendant's drug store. However, plaintiff's reliance on the definition of "cash receipts of sales" and the rent provision ignores the express language contained in those paragraphs. Both provisions describe sales occurring "on said leased premises." There is no dispute that defendant no longer has sales "on said leased premises." Consequently, plaintiff's first argument fails.

Plaintiff next maintains that the other provisions of the lease

would be meaningless unless the percentage rent was based on defendant's sales alone. Specifically, plaintiff points to provisions that defendant's officers must provide a sworn statement detailing its "cash receipts of sales," that plaintiff is allowed access to defendant's records to verify the sales figures, and that the minimum monthly rent will be credited against the percentage rent computed with defendant's cash receipts of sales. Again plaintiff has disregarded the "on said leased premises" language in the lease. These provisions have no meaning, not because defendant has sublet, but because defendant no longer has sales on the leased premies. Had defendant merely gone out of business at that location, which it in fact did from October 1981 until July 1982, plaintiff would have no claim to percentage rents. See *Chicago Title Trust Co. v. Southland Corp.* (1982), 111 Ill. App. 3d 67, 443 N.E.2d 294.

Plaintiff also contends that the lease provision which allows defendant to sublet, while remaining "liable for the payment of rent and for the performance of all other covenants and obligations," requires defendant to pay percentage rents on its own sales. We do not agree. That defendant will remain liable for rent under the lease is nothing more than a guarantee by defendant that it will be responsible should its subtenant or assignee breach the lease provisions. This language cannot be interpreted to impose a duty on defendant to pay rent based on sales occurring at a location other than the leased premises.

Plaintiff finally urges this court to look at the parties' intent as evidenced by their past dealings. With each amendment to the original lease, percentage rents were included and increased. The percentage rent was a substantial portion of the total rents paid. Furthermore, plaintiff argues that the original parties to the lease did not contemplate a unilateral substitution by defendant of a shoe store and its sales in place of defendant's drug store and sales. Plaintiff requests this court to invoke its equitable powers to prevent defendant from avoiding its obligation to pay percentage rents by moving its drug store one block away.

We recognize that plaintiff's rental has been substantially reduced. However, this fact alone is not a sufficient reason to impose an obligation on defendant which is not contained in the lease. Defendant has not committed any act which was prohibited in the lease. The lease does not prevent defendant from subletting. The lease does not prevent defendant from discontinuing its business. The lease does not prevent defendant from opening a new store only one block away from its original location. Nor does the lease guarantee that plaintiff will receive percentage rents. Apart from the clause allowing defendant to

684

sublet the premises, the only other provision which indicates that the original parties contemplated what would happen if defendant sublet the premises is paragraph 21 which binds the parties' successors and assigns to the terms of the lease.

Plaintiff's argument that it should be entitled to rent based on defendant's sales presupposes either a guarantee of the percentage rent or an implied covenant to continue operating. The language of the lease negates a guarantee since percentage rents are paid only if sales on the premises reach a specified level. And the holding in *Chicago Title & Trust Co. v. Southland Corp.* negates the implied covenant. As the *Southland* court held, provisions allowing the tenant to assign are inconsistent with an implied covenant to continue business. The trial court properly interpreted the provisions of the lease and applied the *Southland* holding to the facts of this case.

For the foregoing reasons, the judgment of the circuit court of Cook County granting defendant's motion for summary judgment is affirmed.

Judgment affirmed.

RIZZI, P.J., and WHITE, J., concur.