WIL-SHORE MOTOR SALES, INC., Plaintiff-Appellee, v. CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)   No. 83—1416

Opinion filed December 24, 1984.—Rehearing denied February 21, 1985.

Liebling & Hauselman, of Chicago, for appellants.

Weiner, Neuman & Spak, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Defendants, Dorothy V. Waxler and Sidney Markovitz, appeal from an entry of summary judgment in favor of plaintiff, Wil-Shore Motor Sales, Inc., and from the trial court's order granting plaintiff specific performance of an option to purchase certain real property leased by plaintiff. On appeal, defendants contend: (1) that the trial court erred in granting plaintiff's motion for summary judgment; (2) that the court erred in denying defendants' motion for summary judgment; and (3) that the court erred in denying defendant Waxler's motion to dismiss her from the lawsuit.

Initially we note that the plaintiff was granted leave to file an amended complaint naming as party defendants Continental Illinois National Bank and Trust Company of Chicago, a national banking corporation, as trustee under trust No. 52375; Dorothy V. Waxler; John C. Waxler (jointly Waxler defendants); Central National Bank of Chicago, a corporation, as trustee under trust No. 24439 (Central); Sid-

ney Markovitz; Marion Markovitz; Lezli Elizabeth Markovitz; Michael Jay Markovitz; and Rhoda Elvove Markovitz (jointly Markovitz defendants), and other unknown beneficiaries of trust No. 24439. The trial court granted the motion to dismiss John C. Waxler with prejudice, and he is not a party to this appeal. For simplicity, this opinion will refer only to the principal defendants, Dorothy J. Waxler and Sidney Markovitz.

The record discloses that Waxler is the beneficial owner of property located at 611 Greenbay Road in Wilmette. Plaintiff, an Illinois corporation, is engaged in the business of the retail sale of automobiles and leases the above-mentioned premises from Waxler for the operation of its business under two separate 10-year leases beginning in 1961. The second lease, for the period between February 1, 1971, and January 31, 1981, contains a rider with several provisions. One provision requires Waxler to give plaintiff five days prior written notice to correct any defaults before plaintiff will be deemed in default of the lease and Waxler can re-enter the premises. The rider also creates a right for plaintiff to "meet or refuse" any *bona fide* offer of purchase made to Waxler with regard to the premises. This covenant provides as follows:

> "In the event the Lessor shall during the term hereof be desirous of selling said demised premises, the Lessor shall first communicate in writing any bona fide offer of purchase to Lessee who shall have the prior right to meet or refuse the terms of said bona fide offer on or before ten (10) days from the date of such written communication provided, always, however, that said prior right to acceptance or refusal is expressly conditioned upon the faithful performance and observance by the Lessee of all the covenants, agreements, and conditions on its part herein contained and the payment to the Lessor of the rent hereby reserved up to the date of the completion of such purchase."

The rider to the lease further provides, in paragraph 4 thereof:

> "That no default may be declared by the Lessor or other remedy used, as provided in paragraph 14 of this lease unless and until Lessor shall give Lessee a notice in writing notifying Lessee of any alleged default or violation of this lease and Lessee fails to correct or remedy such default or violation within five (5) days after receipt of such written notice."

Additionally, the rider requires plaintiff to carry insurance covering both plaintiff and Waxler in case of loss or damage to the premises. Plaintiff is also permitted to provide a blacktop surface over the va-

cant parking area on the premises, but plaintiff will be required to seal and reseal the blacktop surface each year or as necessary to keep the surface in good condition.

The record further discloses that on October 12, 1979, Waxler met with James Price Roberts, plaintiff's president and director, and his son, Donald Roberts, vice-president of plaintiff corporation, to discuss a new lease between Waxler and plaintiff. During the meeting Waxler informed James and Donald that she would be willing to sell the leased premises for five or six hundred thousand dollars, but James rejected that price. During 1979 and 1980, Waxler and Donald discussed the possible purchase of the premises by Sidney Markovitz. Markovitz, who was in the business of automobile leasing, testified that he had several private conversations with Donald regarding the possible purchase of the premises leased by plaintiff. Markovitz told Donald that he would be willing to purchase the premises for $250,000, and Markovitz received Donald's assurance that the offer had been conveyed to Waxler. Waxler testified that she telephoned Donald on March 24, 1980, to inform him that she would accept Markovitz' offer to purchase the premises for $250,000.

In July or August, 1980, Markovitz contacted Waxler and after some negotiation, Waxler agreed to sell Markovitz the premises. Waxler and Markovitz agreed to meet on August 12, 1980, to discuss the transaction. According to Waxler, she contacted Donald on August 11, 1980, to inform him that she would be meeting with Markovitz the next day to sell him the premises. Waxler and Markovitz met as planned, and Markovitz presented Waxler with the contract of sale, an escrow agreement and a check for $20,000. The parties agreed that Waxler would arrange for the closing of the deal. On August 25, 1980, Waxler claims that she informed James that she had sold the premises. On September 2, 1980, Markovitz met with Donald to inform him that he had bought the premises for $250,000. The sale was closed on September 12, 1980.

On September 10, 1980, Waxler wrote Donald that the premises had been sold and that rent checks should be made payable to Markovitz beginning on October 1, 1980. The letter was opened by plaintiff's business manager, Isabel Gordon, in mid-September, and she complied with the instructions by sending the October 1, 1980, rent payment to Markovitz.

On September 8, 1980, Donald objected to a request by plaintiff's insurance broker to add Markovitz, the new owner of the property, as an additional insured on the existing policy. Also in September, Donald met with Markovitz to negotiate a new lease of the premises

to begin on February 1, 1981. Waxler sent Donald a letter on October 11, 1980, stating:

> "This is to confirm our telephone conversation. I called and told you I was selling the building and also you were informed of the sale price; however, I did not notify you in writing."

Plaintiff filed the instant action for injunctive relief and specific performance on October 24, 1980. In particular, plaintiff sought, *inter alia*, to set aside the sale and to direct Waxler to sell the leased premises to plaintiff.

The Waxler defendants filed their answer stating that plaintiff was barred from obtaining any relief because of waiver, estoppel, *laches* and unclean hands. Thereafter, the respective parties filed cross-motions for summary judgment, and plaintiff's motion was granted. From this order, Dorothy Waxler, Central National Bank and the Markovitz defendants appeal.

On appeal, Markovitz contends that the trial court erred in granting summary judgment because genuine issues of material fact exist on the question of whether plaintiff, through the acts of its authorized agent, Donald Roberts, has waived its right to exercise the first option on its right to receive written notice and is estopped. The defendants, while conceding that plaintiff was not given written notice of the sale, seek to have an inference drawn that plaintiff, through the actions and subsequent inaction of its agent Donald Roberts, intended to relinquish its rights and that the trial court was bound not to draw any inference regarding plaintiff's intent and the estoppel issue until after a full trial was held. Both defendants specifically contend that plaintiff, through its officer and director, Donald Roberts, as well as through two of its other officers and directors, J. P. Roberts and Clovela Roberts, the parents of Donald, had full knowledge of and participated in the sale of the real estate and failed to take any action for many months to protect its rights. Defendant Waxler claims that conversations were held on March 24, May 12, June 12 and July 2, 1980, with Donald Roberts, and with J. P. Roberts on April 22, 1980, and she was told that neither the plaintiff nor any of its officers, directors or shareholders wanted to buy the property. On August 11, 1980, Waxler told Donald Roberts that she was to meet with Markovitz the next day to sell him the property for $250,000, and Donald Roberts said he thought it was a good deal.

Plaintiff disputes the purported conversations and asserts that in a meeting on July 2, 1980, Donald Roberts told Waxler that plaintiff wanted to remain in business on the premises and agreed upon a new five-year lease upon the same terms and conditions except the rent

was to be $3,500 per month for the first year, increasing annually by $250 per month until the end of the five years. Both parties had agreed that the premises were not going to be sold.

In the amended answer of defendant Waxler, it is admitted that defendant Markovitz had possession of and had examined the lease prior to the execution of the contract to purchase the premises. In the deposition of Markovitz, it was disclosed that Markovitz told his daughter-in-law, Rhoda Markovitz, an attorney, to draw up the buy and sell agreement for the premises and that he later showed the lease to his son, Michael, also an attorney, prior to the closing of the deal. The record also discloses that prior to the final closing, Waxler telephoned Markovitz and told Markovitz that Wil-Shore "had right of first refusal to the property." Markovitz replied to Waxler that "I gave her a deposit on the property and I expect delivery of the property."

█ It is well established that summary judgment determines whether any genuine issue of material fact exists and summarily disposes of cases where no such fact exists. The motion should be granted when the pleadings, exhibits, depositions and affidavits of record show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005(c).) In ruling on a motion for summary judgment, the trial court must construe pleadings, depositions and affidavits included therein most strictly against the moving party and most liberally in favor of the nonmovant. *Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639.

Construction of the terms of a contract presents an issue of law for the court. (*Advertising Checking Bureau, Inc. v. Canal-Randolph Associates* (1981), 101 Ill. App. 3d 140, 427 N.E.2d 1039.) The primary issue remains as to whether plaintiff is entitled to exercise its rights under the lease and the rider provisions. Here the parties are in agreement as to the existence of the lease, but dispute whether there was notice or knowledge of the sale or whether such notice or knowledge is equivalent to a written notice or a waiver thereof.

Defendants urge this court to look at the intent and conduct of plaintiff as evidenced by certain conversations with its officers and directors, all with a view of pointing to some action or inaction as proof of assent to the sale, knowledge of the sale or waiver or estoppel. Even if the assertions are true, nowhere in the record do the defendants seek to show that defendants were prevented by plaintiff from giving the written notice required under the terms of the lease or to show why their failure to give such written notice should be excused.

Nor have defendants shown that plaintiff's conduct, by its agents or directors, intended or expected such conduct to lull defendants into any inaction on the right of first refusal.

It is well settled that in construing the language of a lease, the intention of the parties must govern. (*Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883; *Wilson v. Singleton* (1951), 410 Ill. 611, 103 N.E.2d 72.) The intention of the parties should be ascertained from the language of the lease, and the words used should be given their common and generally accepted meaning. (*American National Bank & Trust Co. v. Lembessis* (1969), 116 Ill. App. 2d 5, 253 N.E.2d 126.) Where the terms are clear and unambiguous, they will be given their natural and ordinary meaning. The contract must be enforced as written, and a reviewing court will not rewrite the contract under the guise of construction. (*Marquette National Bank v. Walgreen Co.* (1984), 126 Ill. App. 3d 680, 467 N.E.2d 954; *Tribble v. Reely* (1976), 171 Mont. 201, 557 P.2d 813.) The cases cited by defendants may be distinguished under the facts and circumstances of each case and offer no support for why the corporation should not be entitled to enforce the lease provisions. See *Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 343 N.E.2d 544.

■ In the case at bar, plaintiff and defendant Waxler freely and openly entered into a second 10-year lease, part consideration for which was the rider provision for the right to purchase the premises conditioned upon defendant's desire to sell. The question presented is whether, under all the facts and circumstances as reflected by the record and the affirmative defenses asserted by defendants, there is established a genuine issue of a material fact. The trial court determined that plaintiff had a right to summary judgment and that defendants have failed to establish the existence of a genuine issue of a material fact. In this regard, the trial court's determination will not be reversed unless an abuse of discretion is shown such that a party's right to fundamental justice is violated. (*Chandler v. Jet Air Freight, Inc.* (1977), 54 Ill. App. 3d 1005, 370 N.E.2d 95. *Audition Division Ltd. v. Better Business Bureau* (1983), 120 Ill. App. 3d 254, 458 N.E.2d 115.) The record does not reveal, nor do the arguments of the defendants show, an abuse of discretion. *Ohio Oil Co. v. Yacktman* (1976), 36 Ill. App. 3d 255, 343 N.E.2d 544.

In order to prevent the entry of a summary judgment, the defendants were obliged to present a *bona fide* factual defense as opposed to general denials and conclusions of law. *Koukoulomatis v. Disco Wheels, Inc.* (1984), 127 Ill. App. 3d 95; *Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed and this cause is remanded for further proceedings in accordance with the views expressed herein.

Affirmed and remanded.

BUCKLEY, P.J., and GOLDBERG,* J., concur.

---

*This opinion was adopted by the court prior to the retirement of Justice Goldberg.