JON S. GERARDI, Plaintiff-Appellant, v. JOSEPH J. VAAL *et al.*, Defendants-Appellees.

Third District   No. 3—87—0658

Opinion filed May 17, 1988.

HEIPLE, J., specially concurring.

Flack, Kwacala, Murphy & Ashenhurst, of Macomb (A. Anthony Ashenhurst, of counsel), for appellant.

Capps, Ancelet & Stoverink, of Carthage (David F. Stoverink, of counsel), for appellees.

JUSTICE SCOTT delivered the opinion of the court:

This action comes on appeal from an order granting summary judgment in favor of defendants pursuant to a declaratory judgment action brought by plaintiff. Plaintiff was seeking a determination by the trial court that defendants breached a lease provision by failing to continue to use and occupy certain leased premises from plaintiff as a retail store for the sale of goods, wares and merchandise. The issue on appeal is whether the lease contains a covenant requiring defendants to continue to do business.

The material facts, admitted by the defendants, are as follows. On January 23, 1948, plaintiff's predecessors in interest leased certain premises in Carthage, Illinois, to Butler Brothers for the operation of a "Ben Franklin" store franchise. Through a series of assignments, defendant Vaal (Vaal) became the tenant under the lease and subsequently assigned his interest, without release, to defendant Smith (Smith). All tenants prior to Smith operated a Ben Franklin store franchise on the premises.

Throughout the years the lease had been amended seven times, the last being April 8, 1980, which extended the lease term to September 20, 1991. At all times the lease had provided for payment of a fixed monthly rent plus a percentage of gross sales in excess of a specified amount. By the terms of a supplemental agreement dated October 10, 1979, still in effect, the minimum rent to be paid was fixed at $7,200 per year, payable in equal monthly installments. Additionally, the tenant was to pay each lease year, beginning October 1, a sum of money equal to 4½% of annual gross sales in excess of $193,333.33. The lease also allows the landlord to examine, at any reasonable time or times, the books and records of the tenant to disclose the amount of gross sales.

Article I(b) of the lease states that the tenant covenants and agrees "to use and occupy the said premises as a retail store for the sale of goods, wares and merchandise, and not to use the same for any illegal purposes." Article I(d) is entitled "Abandonment," and provides in part:

> "That, if the premises shall be abandoned by the tenant during said term, the landlord or his representatives may reenter the

same, *** and let the premises as the agent of the tenant and receive the rent therefore, applying the same *** to the payment of rent due by these presents, and the balance, if any, to be paid over to the tenant, who shall remain liable for any deficiency."

Article II(n) of the lease gives the tenant the unqualified right to sublet the premises subject to the terms of the lease, and Article III requires the landlord to complete certain improvements to the property subject to the tenant's approval. The improvements include installation of a new typical Ben Franklin store front and painting the inside of the premises in Ben Franklin store colors.

In September 1986, Smith ceased doing business on the leased premises and commenced doing business on other property in Carthage, Illinois, the first time since 1948 the property had not been used as a Ben Franklin store. Smith tendered a check for 4½% of gross sales on the leased premises for the period of January 2, 1986, to October 11, 1986, but has since paid only the monthly base rent due under the lease.

Plaintiff further argues that the lease contains an express covenant requiring defendants to continue to do business at the leased premises. Plaintiff cites as authority the cases of *Fox v. Fox Valley Trotting Club* (1956), 8 Ill. 2d 571, 134 N.E.2d 806, and *Simhawk Corp. v. Egler* (1964), 52 Ill. App. 2d 449, 202 N.E.2d 49.

The trial judge distinguished both *Fox* and *Simhawk* from the present case on the basis that "the use provisions in the leases in *Fox* and *Simhawk* were substantially more restrictive than the use provision in the lease in this case." We agree.

In *Fox*, the court considered a lease agreement wherein the lease provided "that the premises 'are to be used solely' for the staging of harness races, at which pari-mutuel wagering is to occur, horse shows, rodeos, auctions and the like." (*Fox*, 8 Ill. 2d at 572, 134 N.E.2d at 807.) The court indicated that because the parties agreed the premises were to be used solely for racing where there was to be pari-mutuel betting and not racing where the only source of revenue would be from concessions or the gate, it would be "grotesque" to conclude that a tenant would be able to cease conducting meets entirely. (*Fox*, 8 Ill. 2d at 574, 134 N.E.2d at 808.) As further support, the court stated that the base rent in itself was not a significant rental figure because the plaintiff could not meet the payments on an encumbrance on the property and pay the taxes on $25,000-per-year rent. (*Fox*, 8 Ill. 2d at 572-73, 134 N.E.2d at 808.) Additionally, the court found it significant that the lease required lessee to expend not

less than $50,000 in repairing and decorating the rented property. Lastly, the court indicated that the parties well knew the defendant's harness racing license allowed it to conduct only one meet per year. Therefore, it surely could not have been the intent of the parties that defendant would obtain permission to conduct harness racing meets and then conduct the meet on other premises.

In *Simhawk*, the lease provided for a minimum rental of $250 per month that would also be applied against the tenant's rental obligation of paying 5% of gross sales on the first $75,000 of sales, 4% on the next $25,000 of net sales, and 2½% on net sales over $100,000 annually. The lease also provided that the "[t]enant agrees that he will use the premises only for the purpose of a shoe store engaged in the sale at retail of children's shoes and footwear." (*Simhawk*, 52 Ill. App. 2d at 450-51, 202 N.E.2d at 50.) The tenant moved its business prior to termination of the lease term and thereafter tendered to the landlord the base amount of rent owed, which was refused.

The court, in upholding that the lease required the tenant to continue business, stated that if the lease did not require tenant "to conduct a retail shoe store in the rented premises during the term of the lease, then computation of the percentage rental which defendant agreed to pay could not be made." (*Simhawk*, 52 Ill. App. 2d at 452, 202 N.E.2d at 51.) The court further held that "[t]he source of the percentage rental was the shoe store and to insure its continued operation the lease specified that the defendant would use the premises only for such purpose." (*Simhawk*, 52 Ill. App. 2d at 454, 202 N.E.2d at 51.) Thus, the court concluded that the lease expressly required the tenant to continue to do business.

In passing, the *Simhawk* court distinguished the case of *Fay v. Montgomery Ward & Co.* (1958), 19 Ill. App. 2d 302, 153 N.E.2d 421, relied upon by defendant, as not applicable factually, in part because the lease involved in *Fay* did not contain any restrictive statement as to the purpose for which the premises were to be used. *Simhawk*, 52 Ill. App. 2d at 456, 202 N.E.2d at 52.

The lease herein provides that the tenant use the premises "as a retail store for the sale of goods, wares and merchandise, and not to use the same for any illegal purposes." The trial court interpreted the language "and not to use the same for any illegal purposes" to mean that the tenant could use the premises for any lawful purpose; moreover, that the lease does not prevent the tenant from discontinuing business and if the parties intended otherwise, a provision could have easily been inserted in the lease.

Plaintiff claims, however, the trial judge's reasoning completely

ignores the *Fox* decision because the trial court's interpretation of the words "and not to use the same for any illegal purposes" ignores the words which precede them.

■ In ascertaining the meaning and intent of a lease, meaning and effect are to be given to all clauses therein, if possible, and then the lease is read in its entirety to ascertain the intent. *Stoddard v. Illinois Improvement & Ballast Co.* (1916), 275 Ill. 199, 113 N.E. 913; *Fox v. Fox Valley Trotting Club* (1956), 8 Ill. 2d 571, 134 N.E.2d 806; *Simhawk Corp. v. Egler* (1964), 52 Ill. App. 2d 449, 202 N.E.2d 49.

■ Neither the *Fox* nor *Simhawk* leases contained the language "and not to use same for any illegal purposes." Moreover, both the *Fox* and *Simhawk* leases contained restrictive language not within the present lease. In *Fox*, the words "to be used solely," and in *Simhawk*, the words "only for the purpose," restrict the use of the premises for that stated within the lease. The present lease contains no such language, although we agree with the plaintiff that such language is not necessarily vital if the intent of the lease is clear. In this case, however, we do not believe that the express terms of the lease clearly reveal that the parties intended the "Ben Franklin" business to continue operation on the premises until the end of the lease term. As further support, we note that the *Simhawk* court also believed, as we do, that certain restrictive language within a lease can be the basis for distinguishing or interpreting the terms in a lease.

■ We do not discount plaintiff's argument, based on *Fox*, that a court may look at circumstances surrounding the lease to support an express covenant to continue to do business. But we do not find the *Fox* case to be dispositive here because the lease instrument here does not contain certain restrictive language, nor do the circumstances present in *Fox* appear to be present here. Thus, we find no express covenant to continue to do business within the lease provision.

Plaintiff next asserts that the lease of the premises contains an implied covenant to continue to do business.

The trial court relied on *Chicago Title & Trust Co. v. Southland Corp.* (1982), 111 Ill. App. 3d 67, 443 N.E.2d 294, and *Marquette National Bank v. Walgreen Co.* (1984), 126 Ill. App. 3d 680, 467 N.E.2d 954, in ruling that the present lease contained no implied covenant to continue to do business. The trial court further based its decision on the abandonment provision of the present lease which the court said is inconsistent with an implied covenant to continue the business and indicates that upon abandonment only base rent would be due.

In *Southland*, a written lease was entered into for the period cov-

ering July 1, 1968, to June 30, 1988. In 1971 the original tenant assigned its rights and obligations under the lease to defendant, Southland Corporation, which thereafter operated a 7-Eleven store until January 1982. The lease provided that the tenant was to pay a fixed monthly rental plus additional rent of 2% of annual gross sales over a specified amount.

The court considered important two provisions of the lease in denying plaintiff's contention that the trial court erred in not declaring the lease created an implied covenant to continue to do business. The first was entitled "Assignment and Subletting," which provided generally that the lessee could assign its interest in the property without consent of the lessor. The second provision, entitled "Use," provided that the lessee was to use "the leased premises as a grocery store for the sale of food, packaged beverages (alcoholic and non-alcoholic) and hard and soft goods or for any other lawful purpose." *Southland*, 111 Ill. App. 3d at 69, 443 N.E.2d at 296.

The court distinguished *Simhawk, Stoddard* and *Fox* on the basis that the leases in those cases contained express use restrictions and did not include the language allowing for "any other lawful purpose." (*Southland*, 111 Ill. App. 3d at 70, 443 N.E.2d at 296.) The court further stated that an express right to assign rights in a lease interest is not consistent with an implied obligation to do business. *Southland*, 111 Ill. App. 3d at 70, 443 N.E.2d at 297, citing Friedman, Leases §6.903, at 144 (1974).

Finally the court stated:

> "The clear and unambiguous provision in the lease contains descriptive words permissive in nature and does not contain any clauses restricting the rights of the tenant, except as to 'lawful use.' If the parties had intended otherwise, they could have inserted simple words of limitation, which they did not." *Southland*, 111 Ill. App. 3d at 71, 443 N.E.2d at 297.

In *Marquette*, plaintiff's predecessor in title and defendant entered into a lease agreement. The lease was later extended and modified to provide a fixed minimum rent and an additional rent based upon a declining scale of percentages as cash receipts of sales increased. The lease also provided that the tenant could use the premises for "any lawful purpose" and allowed the tenant to assign the lease and sublet the leased premises although tenant would remain liable for the payment of rent and other obligations.

The defendant operated a drug store on the leased premises until 1981, when it opened another drug store one block north of the leased premises. In 1982, defendant sublet the store to another company,

which paid monthly rent sufficient to cover the minimum rent defendant owed plaintiff. Plaintiff, however, demanded that defendant also be required to pay additional rent based upon sales at its new location.

The court rejected plaintiff's argument that the lease implied a covenant for defendant to continue operating a business on the premises under the holding of *Southland.* In particular, the court cited *Southland* for the proposition that provisions allowing a tenant to assign rights are inconsistent with an implied covenant. *Marquette,* 126 Ill. App. 3d at 684, 467 N.E.2d at 957.

The court additionally stated that the lease instrument did not prevent the tenant from subletting, discontinuing business or opening a new store only a block away. *Marquette,* 126 Ill. App. 3d at 683, 476 N.E.2d at 957.

Plaintiff asserts that the trial court's reliance upon *Southland* and *Marquette* was misplaced because the language in *Southland* allowing the tenant to use the premises "for any other lawful purpose," and the language in *Marquette* allowing the tenant to use the premises "for any lawful purpose," is not synonymous with the present language "and not to use the same for any illegal purposes." Plaintiff further argues that the trial court's reliance on *Southland* is also misplaced because the *Southland* court's reliance upon Friedman's treatise that a provision to assign a lease is inconsistent with an implied covenant did not take into account the entire passage in Friedman's treatise. Friedman adds that an express right to assign "does not necessarily determine the question fully because conceivably a duty to operate could be placed on the successor in possession." (Friedman, Leases §6.903, at 144 (1974).) Finally, plaintiff disputes the trial court's opinion that the abandonment clause of the lease contemplates that only base rent would be due upon abandonment and is therefore inconsistent with an implied covenant to continue to do business. Instead, plaintiff asserts that the clause does not provide for merely payment of base rent upon abandonment, but provides for application of the rent received upon reletting by the landlord to "the payment of rent due by these presents."

■ We acknowledge that in construing a lease, the instrument is to be considered as a whole (*One Hundred South Wacker Drive, Inc. v. Szabo Food Service, Inc.* (1975), 60 Ill. 2d 312, 326 N.E.2d 400), and the primary object is to derive the intent of the parties (*Kurek v. State Oil Co.* (1981), 98 Ill. App. 3d 6, 424 N.E.2d 56). However, a contract must be enforced as written (*Stull v. Hicks* (1978), 59 Ill. App. 3d 665, 375 N.E.2d 981), and where the terms of a lease are

clear and unambiguous, they will be given their natural and ordinary meaning (*Susmano v. Associated Internists of Chicago, Ltd.* (1981), 97 Ill. App. 3d 215, 422 N.E.2d 879).

■ We consider *Southland* and *Marquette* as on point and see no reason in this case to deviate from the holdings therein. The language of the lease in question does not contain any clause which prohibits the defendant from ceasing operations on the premises. The provision stating that defendant "not use the same for any illegal purpose" must be given meaning, if possible, and we therefore believe that leaving the premises unoccupied is surely not an illegal purpose and allowable under the lease. The illegal purpose provision, considered with the provisions providing for assignment and abandonment, indicate that the trial court properly determined that defendants did not violate an implied covenant to continue to do business.

As the *Marquette* court indicated, merely because the plaintiff's rental income may be substantially reduced, we cannot imply an obligation upon defendant which is not apparent on the face of the lease instrument. (*Marquette*, 126 Ill. App. 3d at 683, 467 N.E.2d at 957.) Moreover, there is no guarantee in the lease that plaintiff would receive any payments over base rent as those payments are premised upon successful operation of a business.

■ Finally, we note that this case comes on appeal from summary judgment. Summary judgment will not be reversed on appeal absent abuse of discretion by the trial court such that plaintiff's right to fundamental justice has been denied. (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201; *Kemp v. Sisters of the Third Order of St. Francis* (1986), 143 Ill. App. 3d 360, 493 N.E.2d 372.) We find no abuse of discretion by the trial court and, accordingly, the decision of the trial court is affirmed.

Affirmed.

BARRY, J., concurs.

JUSTICE HEIPLE, specially concurring:

I agree that the lease in the instant case contains neither an express nor an implied covenant to continue to do business. I also agree that *Fox v. Fox Valley Trotting Club* (1956), 8 Ill. 2d 571, is not dispositive here because the provisions in that lease were more restrictive than the use provision in the lease before this court and because the unique circumstances in *Fox Valley* are not present here. For example, there is no suggestion that the base rent here was less than

the fair rental value for the building as it was in *Fox Valley*; the repairs and decorating performed on this building were not of a nature which restricted possible use of the premises or would be wasted if the tenant altered his plans, as was the case in *Fox Valley*; and unlike the circumstances here, in *Fox Valley* there were licensing restrictions which made it unreasonable to assume the parties ever intended for the tenant to conduct the one harness racing meet permitted annually to be held off the leased premises.

However, contrary to the views expressed by the majority, the lease in this case and the accompanying circumstances are indistinguishable from those in *Simhawk Corp. v. Egler* (1964), 52 Ill. App. 2d 449. The *Simhawk* lease provided for a base rental and a percentage of sales, and the tenant agreed to "use the premises only for the purpose of a shoe store engaged in the sale at retail of children's shoes and footwear." In this case, the lease provided for a base rental and a percentage of sales and the tenant agreed "to use and occupy the said premises as a retail store for the sale of goods, wares and merchandise, and not to use the same for any illegal purposes." Unlike the *Fox Valley* case, the trial court and the majority here have relied solely on the phrase "and not to use the same for any illegal purposes" to distinguish this lease from the one in *Simhawk*. This is not a valid distinction. The phrase is essentially boilerplate language, commonplace in most commercial leases, which adds nothing of substance to this lease and is immaterial to the result reached.

The result reached by the majority is correct, however. This lease contains no express covenant to continue to do business and no such implied covenant can reasonably be found based on the terms of the lease, the surrounding circumstances, or the intent of the parties to the lease. That sums up the situation. The majority should have acknowledged that the *Simhawk* court reached the wrong result and declined to follow it. Instead, the majority has unfortunately relied on an untenable distinction between the two cases.

For the reasons discussed, I specially concur.